# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

*attach 1-2*
*attach A-M*

ROSS, BROVINS & OEHMKE, P.C.
d/b/a LAWMODE, a Michigan corporation,

      Plaintiff,

vs.

Case No. 03-74474

Honorable Nancy G. Edmunds
Magistrate Judge Steven D. Pepe

DEFENDANT'S MOTION TO
DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY
JUDGMENT

LEXIS/NEXIS, a Division of Reed Elsevier
Group, PLC, a British Corporation, and owner
of Matthew Bender & Co., Inc., a New York
corporation, d/b/a Capsoft Development
Corporation,

      Defendant.

_____ /

**FILED**

JUL 0 8 2004

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

GIFFORD, KRASS, GROH,
SPRINKLE, ANDERSON &
CITKOWSKI, P.C.
John G. Posa
280 N. Woodward, Suite 400
Birmingham, Michigan 48009
*Attorneys for Plaintiff*

BUTZEL LONG
James E. Stewart (P23254)
Christopher M. Taylor (P63780)
350 South Main Street, Suite 300
Ann Arbor, Michigan 48104
(734) 995-3110

PROSKAUER ROSE LLP
Charles S. Sims
Frank P. Scibilia
1585 Broadway
New York, New York 0036
(212) 969-3950
*Attorneys for Defendant*

_____ /

## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant LexisNexis moves pursuant to Fed .R. Civ. P. 12(b)(6) for dismissal of all of

Plaintiff's claims, or in the alternative, pursuant to Fed. R. Civ. P. 56 for summary judgment on

all of Plaintiff's claims, as set forth in the accompanying Memorandum of Law.  LexisNexis and

its counsel met with LawMode and its counsel on February 2, 2004, explained its motion and the

bases therefore, and LawMode declined to give its consent.

Respectfully submitted,

BUTZEL LONG

By: _____

James E. Stewart (P23254)
Christopher M. Taylor (P63780)
350 South Main Street, Suite 300
Ann Arbor, MI  48104
(734) 995-3110

*Of Counsel:*

PROSKAUER ROSE LLP
Charles S. Sims
Frank P. Scibilia
1585 Broadway
New York, New York  10036
(212) 969-3950

Dated July 8, 2004

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROSS, BROVINS & OEHMKE, P.C.
d/b/a LAWMODE
a Michigan corporation,

        Plaintiff,

vs.

LEXIS/NEXIS, a Division of Reed Elsevier
Group, PLC, a British Corporation, and owner
of Matthew Bender & Co., Inc., a New York
corporation, d/b/a Capsoft Development
Corporation,

        Defendant.

_____ ____ ____ ____ ____ ____ ____/

Case No.  03-74474
Honorable  Nancy G. Edmunds
(Magistrate Judge Steven D. Pepe)



FILED

JUL 0 8 2004
CLERK'S OFFICE
DISTRICT COURT
MICHIGAN

## MEMORANDUM OF LAW IN SUPPORT OF LEXISNEXIS'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

GIFFORD, KRASS, GROH, SPRINKLE,
    ANDERSON & CITKOWSKI, P.C.
Allen M. Krass (P16218)
John G. Posa (P49445)
101 N. Main Street # 800
Ann Arbor, Michigan 48104
(734) 913-9300

*Attorneys for Plaintiff*

BUTZEL LONG
James E. Stewart (P23254)
Christopher M. Taylor (P63780)
350 South Main Street, Suite 300
Ann Arbor, Michigan  48104
(734) 995-3110

- and -

PROSKAUER ROSE LLP
Charles S. Sims
Frank P. Scibilia
1585 Broadway
New York, New York  10036
(212) 969-3950

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROSS, BROVINS & OEHMKE, P.C.
d/b/a LAWMODE
a Michigan corporation,

    Plaintiff,

vs.

LEXIS/NEXIS, a Division of Reed Elsevier
Group, PLC, a British Corporation, and owner
of Matthew Bender & Co., Inc., a New York
corporation, d/b/a Capsoft Development
Corporation,

    Defendant.

_____/

Case No.  03-74474

Honorable Nancy G. Edmunds
(Magistrate Judge Steven D. Pepe)

Rule 7.1 Statement

**FILED**

JUL 0 8 2004
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

   Pursuant to Federal Rule of Civil Procedure 7.1, Reed Elsevier, Inc., of which LexisNexis

is an operating division, is indirectly 100% jointly owned by Reed Elsevier PLC and Reed

Elsevier NV, public companies in the United Kingdom and The Netherlands, respectively, and

no publicly held corporations own 10% or more of either parents' stock.

BUTZEL LONG

By: _____
James E. Stewart (P23254)
Christopher M. Taylor (P63780)
350 South Main Street, Suite 300
Ann Arbor, MI  48104
(734) 995-3110

*Of Counsel*

PROSKAUER ROSE LLP
Charles S. Sims
Frank P. Scibilia
1585 Broadway
New York, New York  10036
(212) 969-3950

0726/44264-002 NYLIB1/1734668v8    07/07/2004 11:20 AM

i

**Concise Statement Of The Issues Presented**

1.    The principal issue presented is whether the two LexisNexis works are substantially similar to protectable expression in the LawMode Work and thereby infringe LawMode's copyright.  In addition, the motion raises the following issues as well:

2.    Whether LawMode's Lanham Act claim is barred by the Supreme Court's decision in in *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) decision, which held that the Lanham Act cannot be used by an author to complain he is the true "source" of work that the defendant has manufactured and is selling under its own name.

3.    Whether LawMode's claims for unjust enrichment and unfair competition are preempted under 17 U.S.C. § 301.

4.    Whether LawMode's claim for breach of the duty of good faith and fair dealing is fails to state a claim on which relief can be granted.

5.    Whether LawMode's fraud claim should be dismissed for failure to plead fraud with the particularity required by Fed. R. Civ. P. 9(b).

6.    Whether LawMode's claim for breach of contract should be dismissed for inability to satisfy the federal jurisdictional amount-in-controversy requirement, and because the contract does not contain the promises allegedly breached.

7.    Whether LexisNexis is entitled to reasonable attorneys' fees and costs under 17 U.S.C. § 505.

## Controlling and Pertinent Authority Concerning Issues Presented

1. Among the authorities requiring dismissal of LawMode's copyright claim are *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991); *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312 (6th Cir. 2004); *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003); *J. Thomas Distributors, Inc. v. Greenline Distributors, Inc.*, No. 95-2100, 1996 U.S. App. LEXIS 29035 (6th Cir. Oct. 31, 1996) (unpublished decision); and *Kregos v. Associated Press*, 937 F.2d 700 (2d Cir. 1991) and 3 F.3d 656 (2d Cir. 1993).

2. *Dastar v. Twentieth Centry Fox Film Corp.*, 539 U.S. 23 (2003), and *Zyla v. Wadsworth*, 360 F.3d 243 (1st Cir. 2004), require dismissal of LawMode's Lanham Act claim.

3. Among the authorities requiring dismissal of LawMode's unjust enrichment and unfair competition claims as preempted are *Murray Hill Publ'ns, Inc.*, 264 F.3d 622 (6th Cir. 2001) and *Fin. Info., Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d 204 (2d Cir. 1986).

4. Among cases requiring dismissal of LawMode's claim for breach of the duty of good faith and fair dealing, which is governed by Utah law, are *Brehany v. Nordstrom, Inc.*, 812 P.2d 49 (Utah 1991) and *Andalex Resources, Inc. v. Myers*, 871 P.2d 1041 (Utah Ct. App. 1994).

5. Dismissal of LawMode's fraud claim is required by Fed. R. Civ. P. 9(b) and *Am. Town Ctr. v. Hall 83 Assocs.*, 912 F.2d 104, 109 (6th Cir. 1990).

6. Dismissal of LawMode's breach of contract claim for failure to satisfy the diversity requirement is required by cases including *Sellers v. O'Connell*, 701 F.2d 575 (6th Cir. 1983).

7. LexisNexis is entitled to its reasonable attorneys fees by 17 U.S.C. § 505 and such cases as *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, Nos. 03-5003 2004 U.S. App. LEXIS 12009 (6th Cir. June 18, 2004) and *Williams v. Crichton*, 891 F. Supp. 120 (S.D.N.Y. 1994).

ii

# TABLE OF CONTENTS

Preliminary Statement................................................................................................................................1

Statement of Facts...................................................................................................................................4

I.    Plaintiff's Complaint ..........................................................................................................................5

II.   Lexis's Publication of Automated Forms...........................................................................................7

Argument ................................................................................................................................................10

I.    The LexisNexis Works Do Not Infringe The LawMode Work............................................10

   A.    Elements of Claim ..........................................................................................................................10

   B.    Comparison of the Works .............................................................................................................15

      1.   LexisNexis' Selection and Arrangement of Forms Is Not Substantially Similar To LawMode's Selection and Arrangement, and Does Not Infringe Any "Thin" <u>Copyright</u> LawMode Has In Its Selection and Arrangement ........................................................15

      2.   LexisNexis' Automation of These Public Domain Forms Is Not Substantially Similar To LawMode's Automation ............................................................................................19

II.   LawMode's Lanham Act Claim Is Barred By The Supreme Court's *Dastar* Decision .......30

III.  LawMode's "Unjust Enrichment" and "Unfair Competition" Claims Are Also Barred .....32

IV.  LawMode Fails To State A Claim For Breach of Duty of Good Faith and Fair Dealing ....34

V.   LawMode Has Failed To Plead Fraud With Particularity ....................................................37

VI.  The Court Does Not Have Jurisdiction Over LawMode's Breach of Contract Claim .........38

VII. LexisNexis Is Entitled To Reasonable Attorneys' Fees and Costs Under 17 U.S.C. § 505.41

Conclusion ............................................................................................................................................43

0726/44264-002  NYLIB1/1734858v8              07/07/2004 11:20 AM

## Preliminary Statement

Defendant LexisNexis, a division of Reed Elsevier Group, PLC ("LexisNexis"),

respectfully submits this Memorandum of Law in support of its motion pursuant to Fed. R. Civ.

P. 12(b)(6) and 56 to dismiss the claims asserted by Ross Brovins & Oehmke, P.C., a law firm

d/b/a LawMode ("LawMode"), or in the alternative for summary judgment.

LawMode's copyright infringement claim (Count I) alleges that LexisNexis has infringed

a copyright LawMode claims it has in *LexisNexis™ Automated Michigan Forms* (2543 Release

August 2001 ISBN 82054-32-84) (the "LawMode Work"), by wrongfully incorporating portions

of that work in *LexisNexis™ Automated Michigan SCAO Forms* (2584 Release ISBN 82055-44-

48), released in July 2002 (the "2002 LexisNexis Work"), and *LexisNexis™ Automated Forms*

(2584 Release ISBN 82055-44-48), released in April 2003 (the "2003 LexisNexis Work"). (The

2002 and 2003 LexisNexis Works are jointly referred to herein as the "LexisNexis Works").

LawMode's allegations of infringement are vague and conclusory. LawMode complains that

"[s]ome 338 forms" in the LexisNexis Works (or 84% of the LexisNexis forms) were

"substantially copied from the compilation of forms" in LawMode's Work. The infringement is

further alleged, conclusorily and without further specification, to encompass "Content, templates,

certain Script (or computer code) used to express the same ideas in substantially the same

fashion as did LawMode." (Complaint ("Compl.") ¶¶ 36-39.)

Both the LawMode Work and the LexisNexis Works are automated form products which

use HotDocs® — a computer software program application that LexisNexis owns — to

1

automate the generation of legal forms for the Michigan legal market.[1]  However, LawMode's copyright claim is not based on copying of the forms themselves, for the forms LexisNexis's Work automates are all "official forms," created by the Michigan State Court Administrative Office and available on the SCAO's website, or other forms that are not created or copyrightable by LawMode, including forms created by the Michigan Department of Treasury, the Michigan Corporation and Securities Bureau, and the IRS.[2]  LawMode concedes that the LexisNexis Works do not include any of the hundreds of legal forms in which it does claim a copyrightable interest, which were drafted by LawMode's principals, Tom Oehmke and Joan Brovins.  (Compl. ¶ 41.)

As LexisNexis demonstrates below and in the accompanying declaration of Linda Barclay ("Barclay Decl."), insofar as LawMode rests its claim on alleged copying of its selection of forms automated or the arrangement of those forms, the differences between LexisNexis's selection and LawMode's selection and arrangement are so substantial — and any similarity in copyrightable expression so absent — as to preclude any liability as a matter of law.  To the extent LawMode rests its claim on alleged copying of the manner in which it automated these

---

[1]  HotDocs® was created by Capsoft, which was later acquired by Matthew Bender & Co., Inc., and is now a subsidiary of LexisNexis.

[2]  LawMode's Complaint pleads infringement of only *Michigan Automated Practice Forms for LexisNexis*™ (2543 Release February 28, 2001 ISBN 82054-32-84), and its Complaint annexes a Certificate of Registration for that work only.  The registration reflects LawMode's concession that the work is a derivative work within the meaning of 17 U.S.C. § 101.  In identifying the material "in which copyright is claimed," plaintiff asserted copyright only in "component files (ending in .omp) which automated all forms (except Real Estate IRS forms) in this work"; "additional forms represented by computer files ending in .wpd .dot and .tpf"; and "library list of forms with descriptions represented by computer files Mrpfmlhd.hdl and Mfpfmhw.hdl)."  (Compl. Ex. C.)

2

public domain forms, *i.e.*, the copying of "user interfaces," "menu layouts," "data fields for users to complete" (so-called "dialog boxes"), "sequences of menus," or other "look and feel," LexisNexis's expression of those elements is not substantially similar to LawMode's expression of those elements, and, whatever similarities do exist result from the fact that both LawMode and LexisNexis used the HotDocs® software, which is owned by LexisNexis, to automate the same common, straightforward government and other third-party forms.

Courts have repeatedly emphasized that similarity of unprotectable expression (for example, expression which is compelled by external factors) is irrelevant; only substantial similarity of elements in which the plaintiff has a copyrightable interest counts. LawMode's copyright claims are entirely without merit, and should be dismissed because no properly instructed reasonable juror could find the LexisNexis Works substantially similar to the LawMode Work with respect to any expression in which LawMode may have a copyrightable interest.

LawMode's remaining federal claim, under the Lanham Act (Count II), is barred by the Supreme Court's recent holding that the Lanham Act cannot be used to assert claims of false authorship. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37, 123 S. Ct. 2041, 2049 (2003). In addition, the Lanham Act claim is nothing but a disguised copyright claim, and fails for the same reason that its copyright claim lacks merit. LawMode's state law "unjust enrichment" and "unfair competition" claims (Counts IV and V) are preempted under federal copyright law. LawMode's breach of duty claim (Count VII) fails to state a claim because it seeks to establish rights and duties not contemplated by the Agreement. LawMode's "fraud and misrepresentation" claim (Count VI) must be dismissed because it fails to satisfy Fed.

3

R. Civ. P. 9(b).  Finally, this Court does not have jurisdiction to reach LawMode's breach of

contract claim (Count III) because LawMode has failed to meet the federal jurisdictional

amount-in-controversy requirement with respect to that claim.  This claim must also be

dismissed for failure to state a claim.

### Statement of Facts

Given that the core issue presented on this motion is the absence of substantial similarity

as a matter of law, the key facts are the content of the works themselves, which were incorpora-

ted in the Complaint.[3]  To provide the Court with context, however, we include here a factual

statement based largely on the allegations of the Complaint itself, which are accepted as true for

purposes of this motion except where expressly noted otherwise.  Moreover, so that silence or

---

[3]     Because of the vagueness of the allegations contained in the Complaint, LexisNexis
requested, and LawMode agreed to provide, "at least five (5) but no more than nine (9) examples
of forms from [the LawMode Work] which plaintiff claims exemplify the alleged infringement
of the LawMode Work by [LexisNexis] in [the LexisNexis Works]."  (Barclay Decl. Ex.13.)  In
response, LawMode presented a document (Barclay Decl. Ex. 14) in which it alleged similarities
in nine different forms, and pointed out some similarities it claims exist in all forms, and other
similarities it claims exist in multiple (unspecified) forms.

The Court can, and should, also consider LawMode's document on this motion.  A
review of this document and the sample forms discussed therein (which one can assume
represents LawMode's "best evidence" of the alleged infringement) will reveal that the emperor
indeed has no clothes:  that is, there is no substantial similarity between the works, and
LawMode's action is entirely without merit.  We focus on two of the forms referenced by
LawMode (MC 10 and MC 39) in this memorandum.  We address LawMode's other exemplar
forms, and its other "evidence" of alleged similarity in multiple forms, in the Barclay
Declaration.

Although the Court can decide this motion by examining the forms themselves, the
Barclay Declaration, which walks the reader through the alleged "similarities" and quickly
shows what is attributable to the SCAO forms or the HotDocs proprietary software both parties
used (and LexisNexis owns), may be useful in helping to see through the empty nature of
LawMode's inflated and preposterous claims.

4

inaction will not be taken as assent, we also present on this motion evidence demonstrating that the LexisNexis Works were, in fact, independently created. (*See* Barclay Decl. ¶¶ 3-7 and Exs. 1 through 12.)

## I.    PLAINTIFF'S COMPLAINT

Plaintiff is a Michigan professional service corporation. From 1997 until February 26, 2002, it had a "Content Development Agreement" (the "Agreement") with LexisNexis or its predecessors (successively, Capsoft Development Corporation ("Capsoft") and then Matthew Bender & Co., Inc. ("Bender").) (Compl. ¶¶ 2, 14, and Ex. A.) Under the Agreement, plaintiff promised to create, modify, and supplement, on a periodic basis, a software product, which Capsoft (and later its successors) were to market and sell. (*Id.* Ex. A.)

The Agreement was for a term of three years, with automatic renewal for one-year terms "unless written notice of termination is given by either party at least 90 days prior to the end of a term." (*Id.* Ex. A § 7(a).) It is undisputed that LexisNexis, Capsoft's successor-in-interest, terminated the Agreement by notice dated November 2, 2001, effective February 26, 2003. (*Id.* ¶ 28 & Ex. B.)

The software product was to consist of automated legal forms, and the automation was to be undertaken using Capsoft's own computer software application, HotDocs®. LawMode used HotDocs® to automate legal forms, creating computer templates that attorneys could use to generate filled-in, client-appropriate legal forms. Pursuant to the Agreement, Thomas Oehmke "created, modified, updated and supplemented a software Product which was commercially sold" by LexisNexis and was last entitled *LexisNexis™ Automated Michigan Forms* (2543 Release August 2001 ISBN 82054-32-84." (*Id.* ¶¶ 5, 6. ) The work was allegedly commenced in 1997,

5

last published in 2002, and then infringed by LexisNexis's own work, published after plaintiffs' contract with LexisNexis was terminated according to its terms by notice sent on November 2, 2001.  (*Id.* ¶¶ 6, 7, 28 and Ex. B.)

Under the Agreement, LexisNexis's predecessor, Capsoft, was to "own all Products created under this Agreement," and plaintiff was to "own[] all content," with "content" defined as "HotDocs templates created by Developer."  (*Id.* Ex. A., Amended Agreement, §§ 2.c., 1.b.) From 1997 to 2002, the number of automated legal forms in LawMode's Work rose from several hundred to more than 500, most being forms of the Michigan department of Treasury, Michigan Corporation and Securities Bureau, with the balance being allegedly LawMode's "own proprietary legal forms created and automated by LawMode."  (*Id.* ¶ 10. )  Notably, LawMode does not allege that any of those proprietary forms has been included within LexisNexis's own selection.

Two months after publication of the August 2001 version of LawMode's Work, LexisNexis terminated the Agreement in accordance with its terms.  (*Id.* Ex. B.)  Eight months thereafter, in July 2002, LexisNexis published the LexisNexis Work, which allegedly infringes the LawMode Work; and LexisNexis updated its work in April 2003 (2584 release ISBN 82055-44-48), which is also alleged to infringe LawMode's Work. (*Id.* ¶ 29.)

LawMode's complaint nowhere specifies any particular expression that is allegedly copied.  Rather, LawMode alleges generally that:

> (a)     338 forms on the LexisNexis Works (or 84% of the forms on the LexisNexis Works) were "substantially copied from the compilation of forms on" the LawMode Work;

6

07/07/2004 11:20 AM

(b)     LexisNexis "expressed the automation of the forms on [the LexisNexis Works] in a manner that was substantially similar to that of" the LawMode Work; and

(c)     LexisNexis "directly copied and misappropriated portions of the expressive content of [the LawMode Work] by

> (i) "Including Content, templates, certain Script (or computer code) used to express the same ideas in substantially the same fashion as did LawMode";
>
> (ii) "Copying LawMode's compilation of various libraries and sublibraries of SCAO forms, presenting these in substantially the same groupings as presented in [the LawMode Work]"; and
>
> (iii) "Copying LawMode's user interfaces, menu layouts, specific data fields for users to complete, sequences of menus, and other 'look and feel' (and relational database) aspects of LawMode's expression."

(*Id.* ¶¶ 36-39.) As demonstrated below, the copyright claim must be dismissed because neither

LexisNexis's compilation of these Michigan public domain forms, nor its automation of these

forms, is substantially similar to LawMode's copyrightable expression.

## II.    LEXIS'S PUBLICATION OF AUTOMATED FORMS

The Michigan forms product (previously, the LawMode Work, and currently, the 2003

LexisNexis Work) is just one of a number of automated form products released by LexisNexis

and its predecessors, Bender and Capsoft.[4] In fact, although LawMode makes the conclusory

allegation (at ¶ 9) that until Capsoft entered into a business relationship with LawMode it "had

never used HotDocs® to automate a comprehensive set of state-specific forms in integrated

practice areas to the commercial market," that is simply not true:  Capsoft developed in-house,

---

[4]     At present, LexisNexis distributes approximately twenty-four different automated forms products.   (*See* accompanying declaration of Andrew Stein ("Stein Decl.") ¶ 3.)

and released in November 1996, "California Judicial Council Forms for HotDocs®." (Stein Decl. ¶ 4.) Thus, the LawMode Work is neither the first nor the only automated forms product developed and distributed by LexisNexis and its predecessors. (*Id.* ¶ 4.)[5]

In November 2001, subsequent to the August release of the LawMode Work, LexisNexis decided to terminate the Agreement with LawMode, and to develop its own Michigan forms product. LawMode therefore sent LawMode a notice, pursuant to and in accordance with Section 7a of the Agreement, terminating the Agreement effective February 26, 2002. (Compl. Ex. B.)

There were numerous reasons for the termination. The ones most relevant to the copyright claims are: (a) LexisNexis believed that customers essentially want the official forms and are not interested in the author-drafted forms created by LawMode; (b) LawMode's automation skills were not up to LexisNexis's standards (LawMode created "buggy" forms); (c) LexisNexis was trying to achieve consistency in its various form products, and, to achieve that goal, had created and been using consistent automation standards, which LawMode did not follow[6]; and (d) LexisNexis knows how to use its own HotDocs® software to automate public domain forms, so LawMode was not adding any value. (Barclay Decl. ¶ 4.)

---

[5]     Nor was the LawMode Work prepared exclusively by LawMode. LexisNexis played a significant role in the automation of forms for even the LawMode Work. LexisNexis template developers added HotDocs® automation to many of the SCAO forms selected by LawMode, and they also tested and corrected the author-drafted forms automated by LawMode. (Barclay Decl. ¶ 4.)

[6]     For example, LawMode favored the use of "menus" and "dropdowns," while LexisNexis, which favors "keeping things simple," does not. (Barclay Decl. ¶ 4.)

8

Subsequent to terminating the Agreement, LexisNexis worked on preparing a list of the official forms from the Michigan State Court Administrative Office website that should be included in the new LexisNexis product.[7] The current LexisNexis product does not contain all of the forms on the Michigan State Court Administrative Office website, nor does it contain all of the SCAO forms that LawMode included in its product; the number of forms included was dictated by time constraints. The intention is to ultimately have all of the forms that lawyers would be likely to use. (*Id.* ¶ 5.)

Linda Barclay, a LexisNexis paralegal, then went through the SCAO forms selected and created a spreadsheet (that showed what variables were to be used in each form, and the information that needed to flow from form to form), and marked up the forms so that they could be automated in accordance with the LexisNexis Automation Standards. (*Id.* ¶ 6 & Exs. 3-12.)[8] LexisNexis programmers then used HotDocs® to automate the forms in accordance with the Automation Standards and Ms. Barclay's instructions. (*Id.* ¶ 7.)[9] In each instance, the variables in the LexisNexis Work were created independently of the LawMode work, and LexisNexis's Automation Standards were used to create the variables. (*Id.*)[10]

---

[7]    *See* http://www.courts.michigan.gov/scao/courtforms.

[8]    LexisNexis has in its files the original markup of each form included in the LexisNexis Works, as well as the spreadsheets.

[9]    It takes from several hours to several days to automate a form. It took four to six moths for LexisNexis to automate the forms in the 2002 LexisNexis Work. (*Id.* ¶ 7.)

[10]    A "variable" in HotDocs® is an item that is to be entered by a user into a form. According to LexisNexis's Automation Standards, each variable is given a name by the Markup Editor (e.g,, Ms. Barclay), and should incorporate the following characteristics: it should "have a name that describes its function or purpose within the form, it should incorporate "Hungarian

9

**Argument**

## I.   THE LEXISNEXIS WORKS DO NOT INFRINGE THE LAWMODE WORK

As we demonstrate in the accompanying declaration of Linda Barclay, LexisNexis would be able to prove at trial, and even on summary judgment, though documentary and testimonial evidence, that the LexisNexis Works were independently created. Nevertheless, to avoid the expense and burden of discovery, LexisNexis moves to dismiss or, in the alternative, for summary judgment against the copyright infringement claim on a single ground: the LexisNexis Works are not substantially similar in protectable expression to the LawMode Work.

### A.   Elements of Claim

To establish copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[11]  Copying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work *and* that substantial similarities exist as to protectable material in the two works.[12]

---

notation," which is a uniform naming convention (e.g., text entries are labeled "TE," numerical entries are to be named "NU"), it should be distinct from global variables which might share the same name, and it should be simple and intuitive. Thus, using these standards, an appropriate variable name for a form which requires the input of (or which retrieves from other HotDocs® forms) the name of the Petitioner's spouse, would be "Petitioner spouse name TE." (*Id.* ¶ 7.)

[11]   *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).

[12]   *Murray Hill Publ'ns, Inc.*, 361 F.3d at 316; *Kohus*, 328 F.3d at 853-54. For the purpose of this motion, LexisNexis concedes that it had access to the LawMode Work. Summary judgment can and should be granted here because plaintiff must prove *both* access and substantial similarity of copyrightable expression, and it cannot prove the latter. *See, e.g., Dahlen v. Michigan Licensed Beverage Ass'n*, 132 F. Supp. 2d 574, 584 n.9 (E.D. Mich. 2001)

10

Lack of substantial similarity is a well-established ground for summary judgment, even before discovery.[13] "[T]he question of substantial similarity can usually be decided on the basis of the works themselves and rarely, if ever, involves questions of credibility, the peculiar province of the jury," and because "judges . . . are fitted by training and experience to compare literary works and determine whether they evidence substantial similarity."[14] Summary judgment is routinely granted when no reasonable trier of fact could find the works substantially similar in protectable expression.[15]

---

("no matter how closely Defendant might have scrutinized Plaintiff's poster while developing its own, the standard remains the same — namely, Defendant avoids liability for copyright infringement so long as its and Plaintiff's finished works are not substantially similar.").

[13]  *See Silva v. MacLaine*, 697 F. Supp. 1423, 1427 (E.D. Mich. 1988), *aff'd in relevant part, rev'd in part on other grounds*, 888 F.2d 1392 (6th Cir. 1989) ("the Sixth Circuit . . . has not shied from affirming summary judgment in copyright cases on the grounds of lack of substantial similarity").

[14]  *Murray Hill Publ'ns, Inc.*, 361 F.3d at 321. *See also Wickham v. Knoxville Int'l Energy Expo., Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984) ("a court may compare the two works and render a judgment for the defendant on the ground that as a matter of law, a trier of fact would not be permitted to find substantial similarity.")

[15]  *See, e.g., Wickham*, 739 F.2d 1094 (6th Cir. 1984) (affirming grant of summary judgment prior to discovery where comparison of works showed no reasonable juror could find them substantially similar); *Mihalek Corp. v. Michigan*, 814 F.2d 290, 294 (6th Cir. 1987) (affirming grant of summary judgment where "an average reasonable layperson upon [examining the works at issue] could not find substantial or sufficient similarity to establish copyright infringement"); *Stromback v. New Line Cinema*, No. 01-73898, 2002 U.S. Dist. LEXIS 21969, at *23 (E.D. Mich. Oct. 28, 2002) (granting summary judgment prior to discovery where comparison of works showed no reasonable juror could find them substantially similar); *Winfield Collection Ltd. v. Gemmy Indust. Corp.*, 311 F. Supp. 2d 611 (E.D. Mich. 2004) (reviewing works and granting summary judgment on ground of no substantial similarity between protectable elements); *Silva*, 697 F. Supp. 1423 (same); *Burns v. Frontline Gear*, No. 00-CV-70916, 2000 U.S. Dist. LEXIS 19144, at *6 (E.D. Mich. Nov. 17, 2000) (same).

11

Although early dismissal of copyright claims is most often made under Rule 56, it may be entered under Rule 12(b)(6) as well,[16] so long as the relevant works are annexed to or referenced in the complaint.[17]

In determining whether two works share substantially similar protectable elements, the Sixth Circuit utilizes a two step approach. "[T]he first step requires identifying which aspects of the artist's work, if any, are protectable by copyright; the second involves determining whether the allegedly infringing work is substantially similar to protectable elements of the artist's work."[18]

Only substantial similarity as to protectable expression — not similarity as to expression that is not copyrightable at all, or in which the plaintiff lacks a copyrightable interest — can support an infringement claim.[19] Thus, "[t]he essence of the first step is to filter out the

_____

[16]    Nothing turns here on the distinction, except that making the motion under Rule 12(b)(6) as well as Rule 56 obviated the need to file an Answer.

[17]    *See, e.g., Homan v. Clinton*, No. 98-3844, 1999 U.S. App. LEXIS 13401 (6th Cir. June 14, 1999 (unpublished opinion)); *DeBitetto v. Alpha Books*, 7 F. Supp. 2d 330 (S.D.N.Y. 1998) (granting motion to dismiss and for summary judgment); *Boyle v. Stephens, Inc.*, No. 97 Civ 1351, 1998 U.S. Dist. LEXIS 1968 (S.D.N.Y. Feb. 23, 1998); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("This circuit has further 'held that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'"); *In re Credit Acceptance Corp. Secs. Litig.*, 50 F. Supp. 2d 662, 669 (E.D. Mich. 1999) (Edmunds, J.) ("'[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'").

[18]    *Kohus*, 328 F.3d at 855 (internal citations and quotations omitted).

[19]    *Id.* at 853 ("Not all 'copying' is actionable . . . it is a constitutional requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work *that are original*'"); *Mihalek Corp.*, 814 F.2d at 294 (plaintiff bears burden of proving substantial

12

unoriginal, unprotectable elements — elements that were not independently created by the inventor, and that possess no minimal degree of creativity."[20] "Under this first step, the Sixth Circuit has presented three points to guide the determination.

> One, 'it is axiomatic . . . that mere abstract ideas are not protectable, but the expression of an idea is.' . . . Two, pursuant to the 'merger doctrine,' 'where there is essentially only one way to express an idea, the idea and its expression are inseperable [i.e., they merge,] and copyright is no bar to copying that expression.' . . . Three, 'it is also important to filter out scenes a faire: those elements that follow naturally from the work's theme, rather than from the author's creativity or elements that are dictated by external factors such as particular business practices."[21]

Once that filtration is undertaken, "the second step is to determine whether the allegedly infringing work is substantially similar *to the protectable elements of the original.*"[22]  In making such a determination, the Court will generally ask whether "an average reasonable layperson upon such examination" would find the works substantially similar.[23]  The Court must look both at the individual parts of the work and its whole,[24] and must also focus on the differences

---

similarity between allegedly infringing material in defendant's work and *protected material* in plaintiff's work).

[20]   *Kohus,* 328 F.3d at 855 (internal citation omitted); *Winfield Collection Ltd.,* 311 F. Supp. 2d 611.

[21]   *Winfield,* 311 F. Supp. 2d 611 (quoting *Kohus,* 328 F.3d at 856). *See also M.M Business Forms Corp. v. Uarco Inc.,* 472 F.2d 1137, 1139 (6th Cir. 1973) ("Of course, copyright protection is not available for ideas but only for the expression of ideas,") (citing *Mazer v. Stein,* 347 U.S. 201 (1954)); 17 U.S.C. §102(b).

[22]   *Kohus,* 328 F.3d at 856.

[23]   *Mihalek Corp.,* 814 F.2d at 295; *Murray Hill Publ'ns, Inc.,* 361 F.3d at 317-18; *Winfield,* 311 F. Supp. 2d 611; *Burns,* 2000 U.S. Dist. LEXIS 19144, at *6.

[24]   *Silva,* 697 F. Supp. at 1430.

13

between the works that would lead an ordinary observer to conclude that the works are not alike, because "the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other."[25]

As shown in Point I.B, applying these controlling principles, no reasonable person could find the LexisNexis Works substantially similar to the LawMode Work. To be sure, they both automate many of the same official Michigan SCAO forms. But LawMode automated over 200 forms that LexisNexis did not, LexisNexis automated nearly 80 forms that LawMode did not, and LexisNexis has automated less than 60% of the forms automated in the LawMode work (all of which are state forms, not LawMode's own work). (Barclay Decl. ¶10.) And to the extent that the automation of the forms is similar at all, that similarity results from the HotDocs® software, which LexisNexis owns, and does not extend to any protectable expression of LawMode. The only arguable similarities are trivial, scattershot, and not actionable because they relate solely to material unprotected by copyright law.

The works are before the Court and their contents are undisputed. No other evidence is necessary to the determination that there is no substantial similarity as a matter of law.

---

[25]     *Mlhalek Corp.*, 814 F.2d at 295.

14

**B.    Comparison of the Works**

    **1.    LexisNexis' Selection and Arrangement of Forms**
         **Is Not Substantially Similar To LawMode's Selection**
         **and Arrangement, and Does Not Infringe Any "Thin"**
         <u>**Copyright LawMode Has In Its Selection and Arrangement**</u>

      LawMode has alleged that LexisNexis has infringed the LawMode work by "[c]opying

LawMode's compilation of various libraries and sublibraries of SCAO forms, [and by]

presenting these in substantially the same groupings as presented in [the LawMode Work]."

(Compl. ¶ 38.) LawMode's claim founders on the "thinness" of any copyright in the selection of

items such as official legal forms published by a state, and on the extensive differences between

the compilations which precludes any finding of infringement as a matter of law.

      Where copyright is claimed in a compilation or selection of uncopyrighted facts or

material in which the plaintiff lacks a copyright, "the copyright is limited to the particular

selection or arrangement" and does not "extend to the facts themselves."[26] Because of "this

limitation on protectability, the copyright in a factual compilation or in any other work where the

quantum of originality is slight is 'thin,'"[27] and may be found infringed only by a virtually

identical selection or arrangement.[28] Thus, for example, in *Kregos*, the court affirmed a grant of

---

[26]    *Feist.*, 499 U.S. at 351; *Matthew Bender & Co., v. West Publ'g Co.*, 158 F.3d 693, 698-99 (2d Cir. 1998); *Projector-Recorder Belt Corp. v. Consol. Elecs., Inc.*, No. 91-4102, 1992 U.S. App. LEXIS 18399, *2-*3 (6th Cir. July 24, 1992) (unpublished decision); *see also* 17 U.S.C. § 103.

[27]    *Feist*, 499 U.S. at 349; *Matthew Bender & Co.*, 158 F.3d at 699; *Marshall & Swift v. BS&A Software*, 871 F. Supp. 952 (W.D. Mich. 1994); 1 M & D NIMMER, NIMMER ON COPYRIGHT [hereinafter, "NIMMER "] § 2.11[D] (2003).

[28]    1 NIMMER 13.03[A] ("if substantial similarity is the normal measure required to demonstrate infringement, 'supersubstantial' similarity must pertain when dealing with 'thin'

summary judgment for the defendant based on lack of substantial similarity as a matter of law: the plaintiffs' form had nine fields and the defendant's had ten, only six were overlapping, and this difference was not "trivial."[29]  Similarly, in *Matthew Bender & Co.*, the selections of judicial opinions by defendants Hyper-Law and Bender were not held to be not substantially similar as a matter of law to plaintiff West's selection where Hyper-Law's disc contained approximately 36,000 judicial opinions, only 22,000 of which were published by West; and Bender's disc contained many unpublished decisions not found in West's reporters, and, unlike West's reporters, included only federal cases decided by New York courts.[30]

Here, LexisNexis' selection of forms can hardly be considered "virtually identical" to, and differs in "more than a trivial degree" from, LawMode's selection.  The LawMode work contains 545 distinct forms.  The 2002 LexisNexis Work contains 402 distinct forms.  Only 324 forms are common to the two products, and, without exception, every one of these common forms is either a Michigan SCAO form, an IRS form, or another public domain agency form.

---

works."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439, 1442 (9th Cir. 1994) ("we conclude that only 'thin' protection, against virtually identical copying, is appropriate"), *cert. denied,* 513 U.S. 1184 (1995); *Kregos v. Associated Press*, 3 F.3d 656, 663 (2d Cir. 1993) ("if someone else . . . [makes] a selection that differs in more than a trivial degree, [plaintiff] cannot complain"); *Beaudin v. Ben & Jerry's Homemade, Inc.,* 95 F.3d 1, 4 (2d Cir. 1996) (where copyright is "thin," "infringement will be established only by very close copying because the majority of the work is unprotectable); Jane C. Ginsburg, *"No 'Sweat'?  Copyright and Other Protection of Works of Information After Feist v. Rural Telephone*, 92 Colum. L. Rev. 338, 349 (1992) (noting that under *Feist*, nothing "short of extensive verbatim copying" will amount to infringement of a compilation).

[29]      3 F.3d at 664-65.

[30]      158 F.3d at 700 n.11.

16

(Barclay Decl. ¶ 10(c).)[31]  Similarly, the 2003 LexisNexis Work contains 632 distinct forms, and only 353 of the forms in the 2003 LexisNexis Work also appear in the LawMode Work.  Again, without exception, every one of these common forms is either a Michigan SCAO form, an IRS form, or another public domain agency form.  (*Id.* ¶ 10(d).)[32]

Even if the Court were to look at the overlap among only the SCAO forms in the LawMode Work, rather than (as the cases demand) at all of the forms on the LawMode Work, LawMode could not succeed.  The LawMode Work contains approximately 53% of all SCAO forms.  The 2002 LexisNexis Work contains only approximately 52% of those SCAO forms selected by LawMode, and the 2003 LexisNexis Work contains only approximately 58% of those SCAO forms selected by LawMode.  (*Id.* ¶ 10(c).)

LawMode's assertion that LexisNexis has copied its organization and arrangement of forms into "practice areas" is equally without merit.  As LawMode's "exemplar" document demonstrates, there are twenty-five "practice areas" in the LawMode Work, and eighteen in the 2002 LexisNexis Work.  (*See id.* Ex. 14, at Appendix 2.)  Only four practice area categories are identical in the LawMode Work and the 2002 LexisNexis Work: one is the "LexisOne" entry (and, because LexisNexis produced both products, it follows that LexisOne — a product proprietary to LexisNexis — would be included in both), and the other three are identical to

---

[31]     Put differently, roughly 44% of the forms selected by LexisNexis for the 2002 LexisNexis Work are not included in the LawMode Work, and over 35% of the forms contained in the LawMode Work do not appear in the 2002 LexisNexis Work.  (*Id.* ¶ 10(c).)

[32]     Put differently, roughly 44% of the forms selected by LexisNexis for the 2003 LexisNexis Work are not included in the LawMode Work, and over 32% of the forms contained in the LawMode Work do not appear in the 2003 LexisNexis Work.  (*Id.* ¶ 10(d).)

17

categories found on the Michigan SCAO website. (*Id.*) Five additional entries in each work deal

with the same subject matter, but are worded differently (*e.g.*, EPIC Decedent's Estate

(LawMode) and Estates-Trusts (LexisNexis); Civil Litigation (REVISED) (LawMode) and Civil

– General (LexisNexis)). (*Id.*) And, in every one of those cases, the LexisNexis wording

follows the Michigan SCAO wording and the LawMode entry does not. (*Id.*)[33]   In sum, to the

extent that there are similarities in the practice area categories (and there are few), any

similarities result from the SCAO's own arrangement on its website.

Moreover, the categories themselves and the assignment of forms to those categories both

reflects common sense and industry standards (true, *e.g.*, for both LawMode's "Landlord-Tenant

Eviction" category and the corresponding category used by both the SCAO and LexisNexis,

"Landlord-Tenant and Land Contract"), and those categories and the arrangement of forms

thereunder are in any event not actionable.[34]   *J. Thomas Distributors, Inc. v. Greenline*

---

[33]      Moreover, LawMode's arrangement includes the placement of certain topics into
subfolders and sub-subfolders. For example, the "Civil Litigation" folder includes the subfolders
"Alternative Dispute Resolution" and "General," and the sub-subfolder "Case Evaluation."
LexisNexis never uses subfolders or sub-subfolders. LawMode also includes complete "sets" of
references to forms in each practice area, so that a particular reference to a form may appear in
more than practice area. This leads to substantial duplication of references to forms (some forms
are referenced as many as twenty-one times). By contrast, LexisNexis does not present forms in
complete practice area "sets," but follows the organization of the Michigan SCAO website. (*Id.*
¶ 10(a) & Ex.14, at Appendix 3.)

[34]      *See, e.g., Feist*, 499 U.S. at 362; *Kregos v. Associated Press*, 937 F.2d 700, 702 (2d Cir.
1991) ("there can be no claim of a protectable interest in the categories of information
concerning each day's baseball game, including the teams, starting pitchers, the game time, and
the betting odds")(internal citation omitted); *EPM Communications, Inc. v. Notara, Inc.*, 00 Civ.
4299, 2000 U.S. Dist. LEXIS 11533, at *17 n. 6 (S.D.N.Y. Aug. 11, 2000) ("The similarity, and,
in many instances, identity, between the titles of the categories in the Sourcebooks . . . is not a
ground for a finding of infringement because, as a comparison of the titles used by plaintiff and

*Distributors, Inc.*[35] is on point.  There, the plaintiff claimed that the defendant copied a section

from plaintiff's catalog listing lawnmower replacement belts.  Plaintiff's catalog was "organized

in a manner unknown to the industry prior to its publication" in that it included additional

subheadings directly underneath each manufacturer heading, and rearranged the sequence of

presenting the information.  The Sixth Circuit held that "[t]his method of organization, although

perhaps original, lack[ed] the requisite creativity for copyright protection."[36]

> The additional subheadings provided by the plaintiff are similar to business
> headings one would find in the yellow pages.  Such an arrangement is typical, if
> not inevitable. . . . [P]laintiff's replacement belt section is nothing more than a
> common and generic method of organization.  The information provided can
> only be presented in a limited number of ways.  Plaintiff's arrangement
> constitutes a mechanical, routine, and garden-variety compilation.  Such a
> compilation fails as a matter of law to meet the minimal level of creativity
> required for copyright protection.[37]

Like the categories in *J. Thomas Distributors*, LawMode's categories are typical and obvious,

and not sufficiently original to merit copyright protection.

### 2. LexisNexis' Automation of These Public Domain Forms Is Not Substantially Similar To LawMode's Automation

defendant with those used in [a third-party directory] shows, the titles are either the result of
industry convention or 'obvious, garden variety, or routine.'"); *Mid Am. Title Co. v. Kirk*, 867 F.
Supp. 673, 686 (N.D. Ill. 1994) (where it was standard practice in title insurance industry to list
certain facts relevant to awarding insurance, the selection of those facts for inclusion in title
insurance commitment "compilation" was "guided by strong external forces" and not
copyrightable), *aff'd*, 59 F.3d 719 (7th Cir. 1995); *Computer Mgmt. Assistance Co. v. Robert F.
DeCastro, Inc.*, 220 F.3d 396, 402 (5th Cir. 2000) (filtering out, for purposes of assessing
substantial similarity, "elements . . . dictated by the business practices of the industry").

[35]    No. 95-2100, 1996 U.S. App. LEXIS 29035 (6th Cir. Oct. 31, 1996) (unpublished
decision).

[36]    *Id.* at *4.

[37]    *Id.* at *4-5 (internal citations omitted).

LawMode's copyright registration certificate identifies precisely the copyrightable expression in which it staked a copyright claim. In Space 6a on the TX form, which asks the applicant for a derivative work to identify the "material added to the work" by the registrant, LawMode responded as follows: "Using HotDocs™ computer software, created component files (ending in .cmp) which automated all forms (except real Estate IRS forms) in this work."

But HocDocs® belongs to LexisNexis, not to LawMode. The idea or method of automating forms with HocDocs® is not copyrightable.[38] And, as demonstrated below and in the accompanying declaration of Linda Barclay, the results of using HocDocs® on any given form are automated forms that are not substantially similar in copyrightable expression, and whose discrete similarities (where they exist at all) are dictated by the language and structure of the forms themselves and/or the nature of the HotDocs® software — not by any original, creative contribution of LawMode.

Put differently, in automating the forms, the automator's discretion is tightly constrained by the forms themselves and the nature and default settings of the software. The forms dictate that certain information has to go in certain places (logic-flow). The software dictates the most efficient way for the user to get the information into those places, as well as the "look and feel" that end-users will perceive (including the colors of the fields, the fonts, and the size of the typeface in the dialog boxes). (Barclay Decl. ¶ 14.)[39] LexisNexis made substantially different

---

[38]    17 U.S.C. § 102(b).

[39]    *Cf. Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 926 (7th Cir. 2003), where the Seventh Circuit upheld a jury verdict for infringement for the creator of computer software that

20

choices repeatedly, and any remaining similarities are not infringing of any of LawMode's copyrightable expression.

The content of the dialog boxes (which call for the entry of data by the user) and the particular wording used in the dialogs and variable prompts allows for some discretion in the automation process. There may be more than one way to label a particular prompt for data to be entered by a user into a field. One programmer might use the prompt "Petitioner Spouse Name," while another might use the prompt "Name of Petitioner's Spouse," for the same field. Nevertheless, in most cases, the language of the form will be used for the prompt, and LexisNexis' Global Standards (*Id.* Ex. 2) call for the use of the language of the form in the prompt or in additional text. There may also be more than one way in which to order the appearance of the dialogs. But again, the logic of the form usually dictates the flow of the information requests. There could also be some discretion as to where a dialog box ends and where another one begins. But again, a particular dialog box is, in most cases, limited to the data called for by a particular field on a particular form. LexisNexis' Global Style Standards require that related information (*e.g.*, attorney information) be kept together in dialogs, and that the length of the dialog be determined by the number of related variables. (*Id.* ¶ 15.)

These points are well-illustrated by examining one of the SCAO forms automated by both the LawMode Work and the 2002 LexisNexis Work, and the dialog boxes presented o the user by LexisNexis and LawMode for filling out that automated form. Below is a chart

---

automated the transformation and presentation of data used in a HUD-prescribed form because the plaintiff had made decisions as to "choice and size of font, the size of cells and columns, whether and where to use color, the wording of labels and headings . . . and whether to use boldface or italics for column headings."

21

comparing the order, sequence and text of the dialog boxes displayed to a user filling out the

public domain form "MC 10, Judgment, Civil," using the 2002 LexisNexis Work and the

LawMode Work.  MC 10 is one of the forms that LawMode believes "exemplify the alleged

infringement of the LawMode Work by Defendant in [the LexisNexis Works]."[40]

The first column indicates the information requested on the SCAO form itself, using the

actual text from the form's fields.

The second column shows the actual text of the LexisNexis dialog box which prompts the

user for the information that will, at the conclusion of the "interview," be automatically inserted

into the appropriate form fields in the first column.  Each box in the column is a self-contained

dialog box.[41]   The boxes are shown in the order in which the dialog boxes appear to the end

user.[42]

The third column shows the actual text of the LawMode dialog box which prompts the

user for the information that will, at the conclusion of the "interview," be automatically inserted

into the appropriate form fields in the first column.  Again, each box in the column is a self-

contained dialog box, and again the boxes are shown in the order in which the dialog boxes

appear to the end user.  In short, the heart of LawMode's lawsuit is its claim that LexisNexis's

---

[40]     (*See* Barclay Ex. 13 ¶ 2 & Ex. 14.).  The Barclay Declaration discusses the other
"similarities" alleged by LawMode in its Exemplar Document.

[41]     Note that items in bold, which are contained in the dialog boxes, are merely descriptive
headings employed to assist the user by generally describing the nature of the information called
for by the prompts in that dialog box; they are not themselves prompts for information.

[42]     "Screen shots" of the actual dialog boxes are annexed as Exhibit 22 to the Barclay
Declaration.  A copy of the blank form MC 10 is annexed as Exhibit 20.

22

expression in the second column infringes whatever copyrightable expression LawMode may

have in the third column.

| FIELD/INFORMATION REQUESTED ON FORM | 2002 LEXISNEXIS WORK DIALOG BOX AND FIELDS | LAWMODE WORK DIALOG BOX AND FIELDS |
|---|---|---|
| | **Court Information** | **Court Type** |
| **STATE OF MICHIGAN** ___ **JUDICIAL DISTRICT** ___ **JUDICIAL CIRCUIT** | Enter district or circuit as applicable. ___ Judicial District (textbox) ___ Judicial Circuit (textbox) | This case is in: ○ Circuit Court  ○ District Court Judicial Circuit (drop down list) Judicial District (drop down list) |
| **CASE NO.** | Case Number (textbox) | Court case number (text box) |
| **Court address** | Court Street Address (textbox) City (textbox) State (drop down list) ZIP Code (textbox) | |
| **Court telephone no.** | Telephone (textbox) | |
| | **Plaintiff Information** | **Court Information** |
| Plaintiff(s) (textbox) | Name (spreadsheet) | Address of court (textbox) City ST Zip (textbox) Telephone (textbox) Fax (textbox) |
| | **Defendant Information** | |
| Defendant(s) (textbox) ___ | Name (spreadsheet) | |
| | **Party Information** | **Party Information** |
| | Client:  ○ Plaintiff  ○ Defendant Is the opposing party represented by an attorney?  ○ Yes  ○ No | Name of defendant(s) (textbox) Name of plaintiff(s) (textbox) |
| | **Client Attorney Information** | **Plaintiff Attorney Information** |
| Plaintiff/Attorney (large textbox with space for name and address information) | Name (textbox) Bar Number (textbox) Street Address (textbox) City (textbox) State (drop down list) ZIP Code (textbox) Telephone (textbox) | Plaintiff attorney name (textbox) Bar number (textbox) Name of law firm (textbox) Address (textbox) City ST Zip (textbox) Telephone (textbox) Fax (textbox) |
| | **Opposing Attorney Information** | **Defendant Attorney Information** |

23

| Defendant/Attorney (large textbox with space for name and address information) | Name (textbox)<br>Bar Number (textbox)<br>Street Address (textbox)<br>City (textbox)<br>State (drop down list)<br>ZIP Code (textbox)<br>Telephone (textbox) | Defendant attorney name (textbox)<br>Bar number (textbox)<br>Name of law firm (textbox)<br>Address (textbox)<br>City ST Zip (textbox)<br>Telephone (textbox)<br>Fax (textbox) |
|---|---|---|
| | **Judgment or Dismissal Information** | [No title] |
| **JUDGMENT**<br>**For:** _____<br>_____<br>_____<br>**Against:** _____ ____<br>_____<br>☐ Trial    ☐ Consent<br>☐ Summary Disposition<br>☐ Default<br><br>☐ **DISMISSAL**<br>☐ Without prejudice<br>☐ With prejudice | This document is a:  ○ judgment ○ dismissal.<br><br>For: (2 line textbox)<br><br>Against:  (2 line textbox)<br><br>Judgment Type: ○ Trial ○ Consent ○ Summary Disposition ○ Default<br><br>Dismissal Type: ○ Without Prejudice ○ With Prejudice | Type of Judgment  ○ Civil Judgment ○ Dismissal Order<br><br>Complaint was dismissed: ○ without prejudice ○ with prejudice<br><br>Judgment in favor of (drop down list)<br><br>Judgment against (drop down list)<br><br>Nature of judgment (drop down list) |
| | **Other Information** | [No title] |
| Damages    $<br>Interest     $_____<br>Costs        $_____<br>Other (specify) $_____<br>               $_____<br>  Judgment    $_____0.00<br>This judgment will earn interest at current statutory rates.<br><br><br>☐ A note or other written evidence of indebtedness has been filed with the clerk for cancellation.<br>☐ Approved as to form, notice of entry waived. | Damages $ (textbox)<br>Interest $ (textbox)<br>Costs $ (textbox)<br>Specify (textbox)<br>Other $ (textbox)<br>Specify (textbox)<br>Other $ (textbox)<br>Specify (textbox)<br>Other Conditions, If Any (large textbox)<br><br>Select the Appropriate Option(s):<br>○ A note or other written evidence of indebtedness has been filed with the clerk for cancellation.<br>○ Approved as to form, notice of entry waived. | Damages $ (textbox)<br>Judgment Interest $ (textbox)<br>Statutorily Taxable Costs $ (textbox)<br>Specify (textbox)<br>Other Damages $ (textbox)<br>Specify (textbox)<br>Other Damages $ (textbox)<br>Specify (textbox) |
| | | [No title]<br><br>Select each, if applicable<br>○ Note filed with clerk for cancellation<br>○ Approved as to form, notice of entry waived |

24

| | | ○ None of the Above |
| | | Other conditions of judgment, if any (large textbox) |
| | | **[No title]** |
| **IT IS ORDERED** that this judgment is granted. | [The LexisNexis form does not automate this information, so there is no comparable dialog box.] | Name of judge (e.g., Christ T. Brinkley, do not use Hon.) (textbox) Bar number (textbox) Date the judgment will be signed (if known) (date box) |
| Judgment date | | |
| Judge/Court clerk   Bar no. | | |
| Plaintiff/Attorney | | |
| Defendant/Attorney | | |
| **CERTIFICATE OF MAILING** | [The LexisNexis form does not automate this information, so there is no comparable dialog box.] | **Certificate of Mailing** Date this form will be signed (date box) Name of person who will be signing this form (text box) |
| I certify that a copy of this judgment was served upon the other party(ies) or their attorney(s) by ordinary mail at the above address(es). | | |
| Date | | |
| Signature | | |

A comparison of the form fields with the dialog boxes makes a few key points immediately apparent.

*First,* although sometimes the same prompts are used in both works (*see, e.g.,* "Telephone" in LexisNexis's first dialog box and LawMode's second dialog box), such prompts

25

are so obvious that as a matter of law they lack the requisite originality to merit copyright protection.[43]

*Second,* the LexisNexis and LawMode Works are remarkably different, considering that both use HotDocs® to automate the same public domain form calling for the same basic information. The LexisNexis Work is generally truer to the public domain form than the LawMode Work. Thus, for example, when the form asks the user to check a box indicating whether the document is a "Judgment" or "Dismissal," LexisNexis does the same. LawMode, on the other hand, asks whether it is a "Civil Judgment" or "Dismissal Order." Similarly, while both the form and the LexisNexis Work prompt the user to check whether "A note or other written evidence of indebtedness has been filed with the clerk for cancellation," the LawMode Work asks the user to check whether "Note filed with clerk for cancellation."

*Third,* the sequence and formatting of the dialog boxes differs. For example, the titles of the first dialog boxes ("Court Information" and "Court Type") are different. LexisNexis' dialog includes not only circuit/district information and case number, but also court address information. LawMode employs a separate dialog box for court address information. The formatting of the first boxes is also different due to LawMode's use of drop down lists for the circuit and district court information (LexisNexis employs a textbox for direct entry of the

---

[43]    *See, e.g., Matthew Bender & Co. v. West Publ'g Co.,* 158 F.3d 674, 689 (2d Cir. 1998) (copyright protection is limited to "evaluative and creative" works, in which the compiler exercises "subjective judgments relating to taste and value that [are] not obvious and that [are] not dictated by industry convention"); *M.M. Bus. Forms Corp.,* 472 F.2d at 1140 (required creativity lacking where "word arrangements [were] at best merely a paraphrasing of earlier forms").

26

information by the user). Again, the LexisNexis Work more closely follows the text, sequence and format of the actual public domain SCAO form.

*Fourth,* the LexisNexis Works employ descriptive headings in almost every dialog box. LawMode seldom uses headings.

The absence of substantial similarity as a matter of law is shown equally well by another form that the plaintiff selected as one of its "exemplars" — SCAO form MC 39, "Judgment, Claim and Delivery" — and pointed to as a particularly strong example of the alleged "infringement" when the parties met prior to service of the Complaint. In fact, the pages provided by LawMode demonstrate just the opposite. Attached as Exhibit 16 to the Barclay Declaration are 19 pages which LawMode contends exemplify the strength of its claims. Those pages include the blank SCAO form (page 1) underlying the automation by the parties; and then, following, a series of screen shots showing what the user would see on her computer if she were filling out the form using the respective LawMode or LexisNexis CDs. (The "notes" on the right side of those pages are commentary provided by LawMode's counsel, describing the LawMode features on the top half of each page, next to the LawMode screen shot, and pointing out allegedly infringing aspects on the bottom half each page next to the LexisNexis screen shot).

LawMode's own demonstrative exhibit establishes the case for summary dismissal. What is immediately apparent is how different the expression is considering the tight constraints imposed by the requirements of the form and the HotDocs® defaults and software (which is proprietary to LexisNexis, not to LawMode):

27

- The "form fill options" portrayed on page 0 of Exhibit 16 to the Barclay Declaration are simply the default setting of HotDocs®, and are entirely uncreative and uncopyrightable, being industry standard.[44]

- On page 1, LawMode categorizes this screen as seeking "Case Information," while LexisNexis identifies it as seeking "Caption Information." LexisNexis asks the user to "Enter judicial district or circuit as applicable;" LawMode simply provides two bullets, one of which must be filled in. The SCAO form asks for "Case No.", and the LexisNexis form follows; LawMode, by contrast, asks for "Court case number." While LawMode appears to identify some copying in the logic of the forms — because LawMode's form requires selection of either the circuit court or the district court but not both — that logic is the logic of Michigan law, and the fact that any attorney filling out the form even on paper would identify the number of the court she would be filing in (the Circuit Court of the District Court but not both).

- LawMode complains of the basic screen collecting information for any given matter that will be the subject of one or more forms; but there is nothing whatever copyrightable on that form, which uses the HotDocs® format and seeks the most banal, *Feist*-like information (address and telephone number). Even that is worded and formatted differently: LawMode asks for "Address" and has a single box to be filled out with "City St Zip", where LexisNexis asks for "Street Address" and has separate boxes for "City," "State," and "Zip Code."

- Nothing on pages 3 or 4 is copyrightable. And even these uncopyrightable screen shots demonstrate different wording reflecting independent work, not copying: on page 3, for instance, LawMode asks for "Plaintiff(s) Names(s)" and does so on the lined form; LexisNexis captions the box "Plaintiff Information" and asks for "Name".

- The screen shots on page 5 show even further variation, and a pattern emerges: where the screens differ, almost invariably LexisNexis follows the precise wording of the SCAO form (*e.g.*, on the LexisNexis form the seven fields follow the organization on the SCAO form, whereas LawMode uses two different dialog boxes, separates the first two fields from the last four, and does not mimic the SCAO format, as Lexis does.

---

[44]    (See Barclay Decl. Ex. 16 at 1, *see also* Ex. 14, at Appendix 14.)

- Page 6a mimics the SCAO form, except that LawMode follows its preference for drop-down boxes, where LexisNexis — consistent with the standard LexisNexis format used in automated forms for other states — identifies all the choices on the form itself without the use of dropdown boxes. The same difference is apparent on page 6b.

- On page 7, LawMode calls this screen "Property"; LexisNexis calls it "Order of Judgment (continued)", which reflects the organization of the SCAO form. LexisNexis asks "Is it ordered that the following described property shall be delivered immediately to the specified party?" LawMode asks "Shall this property be delivered?"

- Providing yet more evidence of independent creation, although LawMode's screen (on page 8a) asks for the plaintiff attorney's firm name and address, LexisNexis's screen fails to ask for that information.

The conclusions evident from the analysis just undertaken with respect to two SCAO forms apply to the balance of the works. The Declaration of Linda Barclay analyzes the remaining seven forms selected by LawMode as "examples of forms [which] exemplify the alleged infringement," and makes plain that LawMode's claims of substantial similarity as to protectable expression are pure fiction.

With respect to LawMode's allegations that LexisNexis misappropriated "Script (or computer code)" from, and certain "look and feel" aspects of, the LawMode Work, it is not clear, and Law Mode has not identified, what "Script (or computer code)" has allegedly been infringed. Obviously, LawMode cannot claim a copyright in any of the "Script (or computer code)" contained in HotDocs®, which is proprietary to LexisNexis. To the extent LawMode is claiming a copyright in the precise HotDocs® programming commands it used to automate the forms, again, Lexis, not LawMode, owns the copyright in HotDocs®. And to the extent that the LawMode Work and the LexisNexis Works have the same "look and feel," that is not surprising or actionable: every *product* in Lexis's automated forms product line (for jurisdictions other than

29

Michigan) has the same "look and feel" because each uses HotDocs® software, which dictates that "look and feel."[45] Thus, for example, the areas where data is to be filled in by the user are both shaded turquoise on the screens when using both the LawMode and LexisNexis works. But that is a function of the default settings of HotDocs®, and not any independent choice by LawMode. (*Id.*)

## II.    LAWMODE'S LANHAM ACT CLAIM IS BARRED BY THE SUPREME COURT'S *DASTAR* DECISION

LawMode's Lanham Act claim should be dismissed because it charges LexisNexis only with selling, under its own LexisNexis name, CD-ROMs that LexisNexis has concededly manufactured. Such allegations state no Lanham Act claim.

Based on the factual allegations of its copyright claim, plaintiff alleges that LexisNexis

- "used words, terms, symbols, devices, and combinations thereof that constitute the proprietary intellectual property of LawMode, and without LawMode's consent, authorization, or license" (Compl. ¶ 43), and that use has caused, or is likely to cause confusion, mistake, or deception as to the affiliation, the connection or association of Plaintiff and Defendant" (*id.* ¶ 44) or as to the "origin, sponsorship, or approval of the commercial activities they conduct" in Michigan (*id.* ¶ 45); and

- "misrepresented in its commercial advertising and marketing the nature, characteristics, and qualities of their goods . . . which are now diminished as compared to the content created by LawMode." (*Id.* ¶ 46).

These claims for violation of the Lanham Act are defective under the Supreme Court's unanimous decision last term in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23

---

[45]    HotDocs® changed in April 2003; it now has a slightly different look and feel. This was the reason LexisNexis created and released the 2003 LexisNexis Work. (*Id.* ¶ 18.)

30

(2003), which has recently been applied by the First Circuit to dismiss a claim indistinguishable from that here.

In *Dastar,* the Supreme Court held that the Lanham Act could not be used by an author to complain that its work was being sold under the defendant's name. The Court unanimously held that only the Copyright Act, and *not* the Lanham Act, could be used to litigate claims concerning alleged misrepresentation of authorship:

> [R]eading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. *Cf.* 17 U. S. C. §202 (distinguishing between a copyrighted work and 'any material object in which the work is embodied').[46]

The Court's summary of its holding applies squarely here, too:

> Because we conclude that Dastar [the defendant selling the work under its own name] was the 'origin' of the products it sold as its own, respondents cannot prevail on their Lanham Act claim. *Id.* at 32.

The First Circuit recently applied *Dastar* to affirm the dismissal of claims indistinguishable from the Lanham Act claim asserted here. *Zyla v. Wadsworth,* 360 F.3d 243 (1st Cir. 2004). Plaintiff had co-authored the second and third editions of *Personal Nutrition,* a textbook, and sued her publisher over publication of the fourth edition, from which she had withdrawn. Her

---

[46]     *Id.* at 32.   In holding that the Lanham Act does not "prevent[] the unaccrediting copying of a work," the Court noted that the filmed documentary before it had many sources, including those who had shot the original footage compiled in the documentary. "We do not think the Lanham Act requires" the distributor of content to undertake or report to consumers on "this search for the source of the Nile and all its sources." *Id.* at 31.

31

copyright and Lanham Act claims all focused on her allegations that the fourth edition included

some of her work on the second and third editions, without permission or attribution. The First

Circuit's explanation for why it affirmed the trial court's summary judgment against the Lanham

Act claim could have been written for this very case:

> [Plaintiff] argues that the acknowledgments section made an implicit
> representation that none (or at least very little) of the new work in that
> edition was [plaintiff's], when in fact, according to [plaintiff], significant
> portions of the fourth edition copied her original work. . . . The Supreme
> Court has determined, however, that § 43(a)(1)(A) does not apply to the
> type of claim that [plaintiff] raises. In *Dastar Corp. v. Twentieth Century
> Fox*, the plaintiffs had contracted for exclusive rights to manufacture and
> distribute videos of "Crusade in Europe," a television series about World
> War II. . . . (The copyright in the original television series had expired.)
> When Dastar released a video set based on the "Crusade" series, which was
> now in the public domain, without giving credit to the plaintiffs, they sued
> under § 43(a)(1)(A), claiming false designation of origin. . . . The Court
> rejected the plaintiffs' claim, holding that the term "origin" applies only to
> "the producer of the tangible goods that are offered for sale, and not to the
> author of any idea, concept, or communication embodied in those goods."
> . . . The Court found that no false designation of origin had occurred
> because Dastar accurately identified itself as the manufacturer of the
> physical video, even if it had not accurately credited others for the creative
> content of the video. . . . Claims of false authorship, the Court reasoned,
> should be pursued under copyright law instead.

*Id.* at 252-52 (internal citations omitted). Here, as the First Circuit held in *Zyla*, "*Dastar* controls

here and bars [plaintiff's] Lanham Act claim." *Id.* at 252.

## III.   LAWMODE'S "UNJUST ENRICHMENT" AND "UNFAIR COMPETITION" CLAIMS ARE ALSO BARRED

Plaintiff's "unjust enrichment" claim sounds in quasi-contract, and seeks recovery on the

basis of a contract implied in law. It is therefore preempted under controlling Sixth Circuit

authority. Under 17 U.S.C. § 301, a state cause of action is preempted by federal copyright law

32

when: (i) the particular work to which the state law claim is being applied falls within the type of works protected by the Copyright Act under Section 102 and 103 (styled the "subject matter requirement"); and (ii) the state law claim seeks to vindicate "legal or equitable rights that are equivalent" to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106 (styled the "equivalency" or "general scope" requirement).[47] The Sixth Circuit has already held that an unjust enrichment claim predicated on a contract implied in law, as the claim here is (see Compl. ¶ 50), is preempted.[48] Like the plaintiffs in *Murray Hill Publications, Inc.*, LawMode's has asserted an unjust enrichment claim that involves a work which LawMode asserts "falls within the ambit of copyright protection,"[49] and that "depends on nothing more than [the alleged use by LexisNexis] of [LawMode's] work."[50] The claim meets both the subject matter and equivalency requirements, and is preempted.[51]

The allegations underlying LawMode's unfair competition claim (Compl. ¶ 53) make plain that it is merely a state law variant of the Lanham Act claim that the Supreme Court held in *Dastar* is foreclosed by copyright law.[52] The claim depends squarely on the assertion that the work LexisNexis is selling is in fact "LawMode's proprietary intellectual property." That is precisely the dispute under the copyright claim, and implicates the right afforded LexisNexis to

---

[47]     *Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 635-37 (6th Cir. 2001); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997).

[48]     *Murray Hill Publ'ns, Inc.*, 264 F.3d at 637-38.

[49]     *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d at 848.

[50]     *Murray Hill Publ'ns, Inc.*, 264 F.3d at 638.

[51]     *See id.*

[52]     *See* Point II, *supra.*

07/07/2004 11:20 AM

sell its own copyrighted work under the Copyright law (subject to plaintiff's claim that the work

is in fact infringing). Accordingly, the claim is preempted.[53]

## IV.  LAWMODE FAILS TO STATE A CLAIM FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

LawMode alleges (at ¶ 68) that Capsoft, Bender and LexisNexis breached the duty of

good faith and fair dealing inherent in their contractual relationship with LawMode by:

- failing to market LawMode's construction lien templates;

- failing to honor their "commitment to provide LawMode with a complementary copy of HotDocs® after the termination of the Agreement;"

- licensing the non-profit Michigan Institute of Continuing Legal Education (ICLE) as a HotDocs® reseller which, in turn, sold products "confusingly similar" to the LawMode Work;

- failing to negotiate about or renew the term of the Agreement;

- failing to provide LawMode with a list of subscribers (presumably after the Agreement had been terminated "so that LawMode could market its Content and templates to those subscribers under LawMode's HotDocs® reseller licensing arrangement, or in conjunction with ICLE, or through Thompson-West Publishing Company, or another publisher; and

- failing to register LawMode's content with the U.S. Copyright Office.

---

[53]   *See, e.g., Murray Hill Publ'ns, Inc.*, 264 F.3d at 634-35; *Fin. Info., Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d 204, 208 (2d Cir. 1986) ("state law claims that rely on the misappropriation branch of unfair competition are preempted"); *Artle Fields Prods., Inc. v. Channel 7 Of Detroit, Inc.*, No. 94-CV-70730, 1994 U.S. Dist. LEXIS 16828, at *3-5 (E.D. Mich. June 10, 1994) (unfair competition claim preempted; citing cases); *Aqua Bay Concepts, Inc. v. Grosse Point Bd. Of Realtors*, No. 91-CV-74819, 1992 U.S. Dist. LEXIS 16038, at *10-11 (E.D. Mich. May 7, 1992).

34

"Under the implied covenant of good faith . . . the parties to a contract are deemed to intend that the terms of a contract should be construed in a manner which assumes the parties intended that the duties and rights created by the contract should be performed and exercised in good faith. Such a covenant cannot be construed, however, to establish new, independent rights or duties not agreed upon by the parties."[54]

Here, the Agreement does not require defendants to market LawMode's construction lien templates. In fact, the Agreement specifically provides the mechanism by which defendants are to accept Content, and LawMode has not alleged that Bender or LexisNexis accepted the construction lien library as "Content," or that the Content Notice Chart was revised to include that library.[55] The Agreement does not contain any provision requiring the parties to negotiate in good faith to extend the term of the Agreement, and specifically provides the mechanism by which the Agreement can be terminated by either party.[56] Nor does the Agreement obligate defendants to provide LawMode with a complimentary copy of HotDocs® after the termination of the Agreement; refrain from licensing HotDocs® to others, even to competitors of LawMode (the Agreement is non-exclusive); provide LawMode with its subscriber list; or register Content with the Copyright Office. LawMode's attempt to use the implied duty of good faith and fair

---

[54]    *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991); *see also Andalex Resources, Inc. v. Myers*, 871 P.2d 1041, 1047-48 (Utah Ct. App. 1994). Utah law governs the Agreement. (Compl. Ex. A § 12(g).)

[55]    (*See* Compl. Ex. A, Amendment, § 1(b).)

[56]    *Cf. Brehany*, 812 P.2d at 55.

35

dealing to establish those rights and duties that are nowhere to be found in the Agreement is meritless.

LawMode also alleges (at ¶ 69) that the defendants breached the duty of good faith and fair dealing by using certain unspecified confidential information or "trade secrets" of LawMode, including LawMode's "sources of research, application of SCAO and other government forms, data from Michigan practice categories with a market for automated forms, sources of legal forms and their revisions, identification of Michigan markets and submarkets, intelligence about competitors and their products, legal expertise as to the coding of SCAO and other forms, and more." Even if a Court could imply an obligation on defendants not to disclose LawMode's confidential information in exercising their express rights under the Agreement, this claim fails for several additional reasons. *First*, LawMode has not alleged that it disclosed any of this information to any of the defendants under a duty of confidentiality.[57] *Second*, LawMode has not specifically alleged what its trade secrets are, and generalized allegations of trade secrets are insufficient to withstand a motion for summary judgment.[58] *Third*, as discussed above in connection with LawMode's copyright claims, the LexisNexis Works were independently created, and, as such, they did not utilize any of LawMode's "sources of research, application of

---

[57]    *See, e.g., Kubik, Inc. v. Hull*, 56 Mich. App. 335, 347-48, 224 N.W.2d 80, 87 (Ct. App. Mich. 1974) ("To be a trade secret, the information must, of necessity, be a secret; specifically, there must be evidence presented that sufficient measures have been taken to guard the secrecy of the information and preserve its confidentiality.").

[58]    *See, e.g., Compuware Corp. v. IBM*, No. 02-CV-70906, 2002 U.S. Dist. LEXIS 25827, at *19 (E.D. Mich. July 25, 2002) (trade secret must be identified "clearly, unambiguously, and with specificity"); *S.J. Capelin Assocs., Inc. v. Globe Mfg. Corp.*, 34 N.Y.2d 338, 341-43 (1974) (defining trade secrets in "conclusory fashion" is insufficient).

36

SCAO and other government forms, . . . sources of legal forms and their revisions, [or] legal expertise as to the coding of SCAO and other forms." Indeed, the source of the forms and their categories was the publicly accessible Michigan State Court Administrative Office Website. And Bender, as the creator and owner of HotDocs®, surely did not need to draw upon LawMode's "expertise" in coding forms.

## V.  LawMode Has Failed To Plead Fraud With Particularity

"Rule 9(b) requires plaintiffs at a minimum 'to allege the time, place and contents of the misrepresentation(s) upon which he relied.'"[59] LawMode's fraud allegations do not satisfy this standard, and do not state a claim.

LawMode's vague and conclusory allegation that "Lexis/Nexis" made "some misrepresentation(s) about past or existing material facts to LawMode" and that those representations were known by LexisNexis to be false and were relied upon by LawMode to its detriment (Compl. ¶ 58) does not meet the standards of the Federal Rules for pleading fraud with particularity.

LawMode also alleges that an unspecified "Defendant" (Capsoft? Bender? LexisNexis?) induced LawMode to invest substantial time in developing and revising templates; in editing and contributing to sales, marketing and telemarketing plans; in attending seminars, lectures, and other meetings to promote the product; and in continuing to operate under the Agreement, all with knowledge that LexisNexis was going to terminate the Agreement. (*Id.* ¶¶ 60-64.) Again,

---

[59]     *Am. Town Ctr. v. Hall 83 Assocs.*, 912 F.2d 104, 109 (6th Cir. 1990); *see also* Fed. R. Civ. P. 9(b).

37

LawMode has failed to plead that the time, place or content of any of these misrepresentations, and in any event any reliance by LawMode would not have been reasonable given the fact that the Agreement specifically provides that Capsoft (and its successors) could terminate on ninety-days' written notice.[60]

Finally, LawMode alleges (Compl. ¶ 59) that in 2000, "Lexis/Nexis mailed invitations to 8,000 attorneys to meet LawMode's author/attorneys Brovins/Oehmke and view a demonstration of LawMode's Copyrighted Work at the State Bar of Michigan annual Convention . . . ." LawMode further alleges that "Lexis/Nexis fraudulently induced LawMode's attorneys Brovins/Oehmke to prepare for, travel to, and work this Convention to promote LawMode's Copyrighted Work," and that a LexisNexis sales manager "refused to allow Brovins/Oehmke to return to the booth, stating that the interest in LawMode's forms was distracting Conventioneers from purchasing [another LexisNexis product]." (*Id.*) Again, LawMode has not plead the content of any misrepresentation, nor has it alleged how it was harmed. Bender (not LexisNexis) sent Tom Oehmke and Joan Brovins to the Michigan State Bar annual convention in 1998, 1999 and 2000, at LawMode's request, and at Bender's expense. (Stein Decl. ¶ 5.)

## VI.   THE COURT DOES NOT HAVE JURISDICTION OVER LAWMODE'S BREACH OF CONTRACT CLAIM

The Agreement contains a limitation of liability clause (in paragraph 9) that states:

THE LIABILITY OF EITHER PARTY FOR ANY DAMAGES UNDER THIS AGREEMENT SHALL IN NO EVENT EXCEED THE AMOUNT OF PAYMENTS RECEIVED BY IT UNDER THIS AGREEMENT.  IN NO

---

[60]   (Complaint Ex. A §7(a).)  LawMode's allegations of *scienter* are also chronologically challenged to the extent they allege that *Capsoft and Bender* were inducing LawMode to take actions in 1997-2001 while *LexisNexis* knew it was going to terminate in 2002.

38

EVENT SHALL EITHER PARTY BE LIABLE FOR INDIRECT, SPECIAL,
PUNITIVE OR CONSEQUENTIAL DAMAGES OR LOST PROFITS
SUFFERED AS A RESULT OF OR IN ANY WAY CONNECTED TO THE
LICENSE GRANTED IN THIS AGREEMENT, WHETHER UNDER THEORY
OF CONTRACT, [OR OTHERWISE].

Here, LexisNexis earned a total of $41,527.58 in revenue from sales of the LawMode Work.

(Stein Decl. ¶ 6.)   Of that, $12,458.27 was paid to LawMode in royalties pursuant to the

Agreement, leaving a net total of $29,069.31 to LexisNexis.  (*Id.*)  Because, pursuant to the terms

of the Agreement, this is the maximum amount LawMode would be entitled to if it were to

succeed on its breach of contract claim, LawMode has failed to satisfy the federal jurisdictional

amount-in-controversy requirement.[61]

In any event, LawMode's  breach of contract claim fails to state a claim.  Some of

LawMode's contract allegations are merely copyright claims dressed up as contract claims.[62]  As

such they are preempted.[63]  And, for the reasons discussed above (in Section I), LexisNexis did

not convert and was not selling LawMode's Content.  Several of the remaining allegations

---

[61]     28 U.S.C. § 1332(a)(1); *Kelly Movers, Inc. v. N. Am. Van Lines, Inc.*, No. 98 Civ. 5004
(JSM), 2000 U.S. Dist. LEXIS 2133, at *4 (S.D.N.Y. Feb. 29, 2000) (in diversity complaint,
plaintiff "has the burden of proving that it appears to a 'reasonable probability' that the claim is
in excess of the statutory jurisdictional amount"); *Sellers v. O'Connell*, 701 F.2d 575, 578 (6th
Cir. 1983) (affirming dismissal of complaint where it was a legal certainty that plaintiff was not
entitled to recover more than the statutory amount).

[62]     (See Compl. ¶¶ 30(a), 48(b) (alleging that LexisNexis breached the Agreement by
"[a]ttempting to convert to its own use LawMode's forms without paying licensing fees" and by
"[m]isappropriating LawMode's content by converting some or all of it to Defendant's own
use").)

[63]     *See, e.g., Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 931-32
(S.D.N.Y. 1996) (contract claim pre-empted where it asserted no extra element beyond that
required for copyright infringement).

39

complain of the breach of duties that are not in and/or are contrary to the Agreement.   For

example, LawMode alleges that Bender and LexisNexis breached the Agreement by:

- "Failing to timely and correctly publish revised or updated versions of LawMode's content and templates (in violation of ¶ 1(b) of the Agreement) or in a form approved by LawMode (in violation of ¶ 1 (b) of the amended Agreement)," and "[f]ailing to meet promised production deadlines which discouraged new and renewal subscribers and which diminished the reliability of LawMode's Copyrighted Work in the eyes of purchases and potential purchasers" (Compl. ¶¶21(a), 48(e));

- "Continuing to sell LawMode's Copyrighted Work without updated/supplemented forms during 2002 until its own July 2002 Derivative Work was published" (Compl. ¶ 30(c)); and

- "Marketing Defendant's Derivative Work to the same subscribers (i.e., installed computer user base) whose product loyalty and initial purchases were earned by LawMode's creative and marketing efforts from 1997 through 2002." (Compl. ¶ 48(d).)

But the Agreement contained no time period within which Capsoft must publish revised or

updated versions of Content, no prohibition on selling Product without "updated/supplemented

forms," and no non-compete clause or any other restriction in the Agreement that prohibits

Bender or LexisNexis from selling its own, original, non-infringing Product to customers of

LawMode after expiration of the contract.  (*See generally* Compl. Ex. A.)

LawMode further claims that LexisNexis breached by "failing to publish certain libraries

of forms (*e.g.*, real estate, construction liens, employment handbook)."  (Compl. ¶ 48(f).)  But

the Agreement specifically provided that templates were to be deemed Content only at such time

as LawMode delivered such templates to Capsoft accompanied by a notice identifying them as

Content, "and such content is accepted by Capsoft, i.e. as listed in Content Notice Chart to which

the parties may agree to add additional content from time to time."  The Agreement also provides

that it may not be modified except by a writing signed by authorized representatives of both

parties. LawMode does not allege that the Agreement was modified by a writing signed by

authorized representatives of both parties. Nor does LawMode allege that Bender or LexisNexis

ever accepted the real estate, construction lien or employment handbook library as "Content," let

alone allege that the Content Notice Chart was revised to include those libraries. Failing such

acceptance, Bender/LexisNexis had no obligation to publish those libraries.[64] LawMode's

breach of contract claims should be dismissed along with all of its other claims.

## VII.    LexisNexis Is Entitled To Reasonable Attorneys' Fees And Costs Under 17 U.S.C. § 505

Section 505 of the Copyright Act provides that the Court may award costs and reasonable

attorneys' fees to the prevailing party. Courts have not hesitated to award attorneys' fees to

---

[64]    LawMode also alleges that *Capsoft* breached the Agreement by providing prospective
customers with complimentary copies of "LawMode's Copyrighted Work" as a promotion
without paying LawMode any licensing fees; publishing templates containing content
unapproved by LawMode; failing to use its "best efforts" to market LawMode's Copyrighted
Work; failing or neglecting to produce quarterly licensing statements and failing to timely pay
LawMode its earned licensing fee; failing to publish or timely publish certain Content per the
amended Agreement that Capsoft had accepted as Content; and failing to timely and correctly
publish revisions, updates or supplements of LawMode's Content and templates in a form
approved by LawMode. (Compl. ¶17.) Nevertheless, each of LawMode's claims relating to
alleged breaches of the Agreement by Capsoft is time barred. Bender acquired Capsoft (via an
asset purchase) on September 29, 1997. Thus, any acts by Capsoft necessarily occurred on or
before that date. Under Michigan law, the limitations period for all actions to recover damages
for sums due for breach of contract is six years. M.C.L.A. § 600.5807(8). Thus, any cause of
action for breach of the Agreement based on acts by Capsoft expired on or before September 29,
2003. LawMode did not file its Complaint until November 5, 2003.

41

prevailing defendants where plaintiff's claims were "objectively unreasonable."[65] This includes

cases where, as here, "the claim of substantial similarity between the works at issue here [is]

objectively unreasonable."[66]

*Williams v. Crichton*, 891 F. Supp. 120, 122 (S.D.N.Y. 1994), is closely on point. There,

the court found "objectively unreasonable" plaintiff's claim that his children's book was

substantially similar to the movie *Jurassic Park*, where it "was based on the comparison of

'highly selective, scattered details.'" *Id.* at 122. The court also noted that plaintiff's complaint

did not allege anything "novel" or "complex"; rather it presented a run-of-the-mill issue of

substantial similarity.[67]

This case is precisely the kind of case in which fees have repeatedly been awarded.

Plaintiff's claims of substantial similarity have been objectively unreasonable since the day this

suit was filed. Plaintiff undertook its work knowing that the publisher was free to terminate the

contract on notice and automate the same state bar forms that LawMode had automated. The

---

[65]    *See, e.g., Bridgeport Music, Inc. v. Diamond Time, Ltd.,* Nos. 03-5003, 03-5656, 2004 U.S. App. LEXIS 12009, at *33 (6th Cir. June 18, 2004); *Coles v. Wonder,* 283 F.3d 798, 803 (6th Cir. 2002).

[66]    *Littel v. Twentieth Century-Fox Film Corp.,* No. 89 Civ. 8526, 1996 U.S. Dist. LEXIS 454, at *7 (S.D.N.Y. Jan. 18, 1996), *aff'd sub nom. DeStefano v. Twentieth Century-Fox Film Corp.,* 100 F.3d 943 (2d Cir. 1996).

[67]    *Id.* at 121. *Cf. Murray Hill Publ'ns, Inc.,* 264 F.3d at 639 (noting that "district court has the ability to impose attorney fees in frivolous and objectively unreasonable lawsuits," including those where claims of substantial similarity "were utterly devoid of merit," but reversing award of attorneys' fees because, unlike here or *Williams,* the law with respect to one or more of plaintiffs' claims was unsettled).

42

claims rest on allegations of copying that a moment's examination of the products would have shown were baseless.

Moreover, plaintiff is a law firm; its attorneys are better able than ordinary plaintiffs to read the law and understand their rights and those of the LexisNexis and its predecessors. They filed this lawsuit as a form of legalized extortion, for its settlement value (the expenses that LexisNexis would have in order to obtain dismissal even of groundless claims), and should not have done so.[68]

As the intransigence and greed of the plaintiff have put defendant to the entirely unwarranted expense of preparing this motion, the costs of dismissing this action should properly be shifted to them.

### Conclusion

For all the foregoing reasons, the motion to dismiss or for summary judgment should be granted.

July 7, 2004
New York, New York

BUTZEL LONG

By:    James E. Stewart (P23254)
       Christopher M. Taylor (P63780)
       350 South Main Street, Suite 300
       Ann Arbor, Michigan 48104
       (734) 995-3110

*Attorneys for Defendants*

---

[68]    *Cf. Bridgeport Music, Inc.*, 2004 U.S. App. LEXIS 12009, at *34 (affirming award of fees in part because trial court inferred "that the litigation was undertaken and prosecuted in a fashion that would multiply the fees and encourage nuisance settlement.")