# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROSS, BROVINS & OEHMKE, P.C.
d/b/a LAWMODE,  a Michigan corporation,

      Plaintiff,

vs.

      Case No.  03-74474
      Honorable  Nancy G. Edmunds
      Magistrate Judge Steven D. Pepe

LEXIS/NEXIS, a Division of Reed Elsevier
Group, PLC, a British Corporation, and owner
of Matthew Bender & Co., Inc., a New York
corporation, d/b/a Capsoft Development
Corporation,

      Defendant.

_____/

| | |
|---|---|
| GIFFORD, KRASS, GROH,<br>SPRINKLE, ANDERSON &<br>CITKOWSKI, P.C.<br>John G. Posa<br>280 N. Woodward, Suite 400<br>Birmingham, Michigan 48009<br>*Attorneys for Plaintiff* | BUTZEL LONG<br>James E. Stewart (P23254)<br>Christopher M. Taylor (P63780)<br>350 South Main Street, Suite 300<br>Ann Arbor, Michigan  48104<br>(734) 995-3110<br><br>PROSKAUER ROSE LLP<br>Charles S. Sims<br>Frank P. Scibilia<br>1585 Broadway<br>New York, New York  0036<br>(212) 969-3950<br>*Attorneys for Defendant* |

_____/

## DEFENDANT LEXIS/NEXIS' MOTION
## FOR RECONSIDERATION

Defendant Lexis/Nexis, by its attorneys, moves this Court, pursuant to Eastern District of Michigan Local Rule 7.1(g), for reconsideration of the Court's December 9, 2004 Opinion and Order to the extent that it declined to dismiss or grant Lexis/Nexis summary judgment with respect to LawMode's claim (Complaint ¶ 48.b) that Lexis/Nexis breached the Agreement by "misappropriating LawMode's content by converting some or all of it to Defendant's own use," and for a dismissal of that claim.

This Motion is based upon the facts, arguments and legal authority in Lexis/Nexis' accompanying Brief in Support of this Motion.

On December 16, 2004, Counsel for Lexis/Nexis sought concurrence in the relief requested by this Motion, but such concurrence was denied.

WHEREFORE, Lexis/Nexis respectfully requests that this Court grant its Motion for Reconsideration.

Respectfully submitted,

BUTZEL LONG

By: _____
James E. Stewart (P23254)
Christopher M. Taylor (P63780)
350 South Main Street, Suite 300
Ann Arbor, Michigan   48104
(734) 995-3110

PROSKAUER ROSE LLP
Charles S. Sims
Frank P. Scibilia
1585 Broadway
New York, New York  10036
(212) 969-3950

Dated:  December 17, 2004

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROSS, BROVINS & OEHMKE, P.C.
d/b/a LAWMODE, a Michigan corporation,

       Plaintiff,

vs.

LEXIS/NEXIS, a Division of Reed Elsevier
Group, PLC, a British Corporation, and owner
of Matthew Bender & Co., Inc., a New York
corporation, d/b/a Capsoft Development
Corporation,

       Defendant.

_____/

Case No.  03-74474
Honorable  Nancy G. Edmunds
Magistrate Judge Steven D. Pepe

## LEXISNEXIS'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR RECONSIDERATION

GIFFORD, KRASS, GROH,
SPRINKLE, ANDERSON &
CITKOWSKI, P.C.
John G. Posa
280 N. Woodward, Suite 400
Birmingham, Michigan 48009
*Attorneys for Plaintiff*

BUTZEL LONG
James E. Stewart (P23254)
Christopher M. Taylor (P63780)
350 South Main Street, Suite 300
Ann Arbor, Michigan  48104
(734) 995-3110

PROSKAUER ROSE LLP
Charles S. Sims
Frank P. Scibilia
1585 Broadway
New York, New York  0036
(212) 969-3950
*Attorneys for Defendant*

Table of Contents

Page

Procedural Background.................................................................................................2

Argument ......................................................................................................................3

Conclusion ...................................................................................................................7

i

Table of Authorities

Page

**Cases**

*Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993) ........................................................ 6

*Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1318 (11th Cir. 2001) ..................................... 4

*Stromback v. New Line Cinema*, 384 F.3d 283, 301-02 (6th Cir. 2004) ......................................... 6

*Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457-58 (6th Cir. 2001) ...................................... 4, 6

**Statutes**

17 United States Code Section 301 ................................................................................................ 5

### LEXISNEXIS'S MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION FOR RECONSIDERATION

LexisNexis respectfully moves for reconsideration of one of the many holdings rendered by the Court's Opinion and Order dated December 9, 2004: the Court's decision not to dismiss or grant LexisNexis summary judgment with respect to LawMode's claim (Complaint ¶ 48.b) that LexisNexis breached the Agreement by "misappropriating LawMode's content by converting some or all of it to Defendant's own use" (hereafter, the "breach-of-contract-by-misappropriation claim"). That decision not to dismiss that claim is palpably in error: notwithstanding the Agreement between LexisNexis and LawMode, the breach-of-contract-by-misappropriation claim is not, in fact, a contract claim, but only a thinly-disguised copyright infringement claim (which the Court has already held lacks merit), or, at best, a claim for misappropriation or conversion (which would be preempted). Correction of that error would have a substantial impact on the scope of any issues remaining and on the discovery to be undertaken by the parties.

While an agreement respecting intellectual property *might in theory* embody a promise by the commissioning party not to copy the work of the developer, and copying in breach of such a promise might be enforceable *either* in a copyright infringement claim *or* in breach of contract claim, the Agreement in *this* case contains no such promise. The fully integrated Agreement contains no promise that LexisNexis would not "misappropriate" or "convert" LawMode's content or convert it to LexisNexis's use, and so the Court should grant reconsideration and hold that LawMode's breach-of-contract-by-misappropriation claim is subject to dismissal or summary judgment as a matter of law.

## Procedural Background

1. The breach-of-contract-by-misappropriation claim is grounded in two specific allegations. First, LawMode alleges in the factual section of the Complaint (¶ 30.b) that LexisNexis "breached the amended Agreement" by "attempting to convert to its own use LawMode's forms *without paying licensing fees by disavowing the amended Agreement while still selling Plaintiff's Content.*" Second, LawMode alleges in Count III (¶ 48.b) that LexisNexis breached the Agreement by

> [m]isappropriating LawMode's content by converting some or all of it to Defendant's own use (violating ¶ 2(c) of amended Agreement dated 04 May 1997) as the Parties' Agreement states that LawMode as "Developer owns all content."[1]

2. LexisNexis's motion to dismiss or for summary judgment argued that this claim was merely a copyright claim dressed up as a contract claim, and hence preempted, noting that the factual allegation is framed in terms of "misappropriation" and "conversion." LexisNexis cited the two relevant allegations of the Complaint (cited above), which pointedly lack *any* contractual promise to pay license fees for any usage *after* the term of the Agreement, or indeed any contractual constraint on what LexisNexis might do after the term of the Agreement. LexisNexis opening brief at 39 & n. 62; *see also* LexisNexis reply brief at 16-17 (noting that LawMode had not addressed LexisNexis' argument that the contract claim alleging post-term misappropriation and conversion was only a disguised claim for misappropriation, and therefore preempted).

3. The Court's Opinion and Order (December 9, 2004) held that the breach-of-contract-by-misappropriation claim was not preempted because it "requires the existence of a valid contract, which a copyright claim does not." The opinion did not, however, specify any

---

[1]    A copy of the Complaint with the Agreement is attached for convenience as an addendum below.

2

contractual promise that a factfinder might consider had been breached by the conduct alleged (namely LexisNexis's creation and distribution of the LexisNexis works).

4. Pursuant to Local Rule 7.1, counsel for LexisNexis engaged in a telephonic conference with counsel for LawMode, explained the nature of the motion and its legal basis, and requested but did not obtain concurrence in the relief sought

## Argument

The Court's holding that breach of contract claims respecting copyrighted works generally are not preempted – that a contractual promise generally supplies the extra element necessary to render a claim un-equivalent to a copyright claim and hence suffices to avoid preemption – is certainly correct. However, that rule does not supply a sufficient basis for the Court's decision not to dismiss the breach-of-contract-by-misappropriation claim here, for the Agreement contains no contractual promise against "misappropriation" or "conversion" or even "use" that could arguably have been breached by LexisNexis's post-term development and sale of its own work. From every conceivable perspective, the "contract claim" alleged in ¶¶ 30.b and 48.b is subject to summary judgment as a matter of law, as can quickly be seen once analysis proceeds past reference to a contract to consideration of just what contractual promise is alleged to have been breached.

The fully integrated Agreement, which "constitutes the entire understanding and contract between the parties" (Agreement ¶ 12.a),[2] contains no relevant promises whatever by LexisNexis respecting post-term conduct, and no promise that was arguably breached by LexisNexis's creation and distribution of its works. Thus, this is not a case where the plaintiff has obtained a

---

[2]    Paragraph 12.a provides: "This Agreement constitutes the entire understanding and contract between the parties hereto and supersedes any and all prior or contemporaneous oral or written communications with respect to this matter."

promise from the alleged infringer "not to copy" and seeks to enforce those in an action for breach of contract.[3]

The *only* provision of the Agreement asserted to underlie the breach-of-contract-by-misappropriation claim here is ¶ 2.c, which provides:

> [LexisNexis] shall own all Products created under this Agreement.
> [LexisNexis] shall obtain no ownership of Content.

Because "Content" is defined in ¶ 1.b as "HotDocs templates created by the Developer", this provision says *only* that LexisNexis shall obtain no ownership *of HotDocs templates created by LawMode.* The provision is thus entirely irrelevant – a red herring – because it contains no restraint on use of HotDocs templates *created by LexisNexis,* says nothing whatever about use of such templates, and in any event the Court has already held that the LexisNexis works are not HotDocs templates created by LawMode. Given the clarity and limited scope of the contractual provision and the Court's rejection of LawMode's copyright claim, it may be said of LawMode's breach-of-contract-by-misappropriation claim, as was true of Gertrude Stein's Oakland and LawMode's copyright claim, "There's no there there." Because there is no evidence whatever from which a jury could find that LexisNexis breached paragraph 2.c of the Agreement, the breach-of-contract-by-misappropriation claim should have been dismissed: on the undisputed record, as a matter of law, there is no contractual provision barring appropriation or conversion,

---

[3]     Even if the Agreement had such a promise, moreover, a claim for breach of that promise would not be enforceable in the Sixth Circuit. *See Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457-58 (6th Cir. 2001) ("If the promise amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted. The contrary result would clearly violate the rule that state law rights are preempted when they would be abridged by an act which in and of itself would infringe one of the exclusive rights of § 106." The law differs in some other circuits. *See Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1318 (11th Cir. 2001) (expressly disagreeing with the Sixth Circuit's holding in *Wrench*).

4

and in any event the rationale for dismissing the copyright infringement claim would require dismissal.

The same result obtains if, contrary to the Agreement's integration clause and basic contract law principles, ¶ 1.b were somehow construed as a promise to respect LawMode's copyright. In that case, the breach-of-contract-by-misappropriation claim would fall with the Court's holding that LexisNexis has not infringed any copyrightable expression of LawMode.

Similarly, if ¶ 1.b were somehow construed (contrary to its plain meaning and the integration clause of paragraph 12) as a promise to pay license fees for LexisNexis's use of the works *after* termination of the Agreement, then the breach-of-contract-by-misappropriation claim would fall because the obligation to pay license fees (Agreement, ¶ 4) arises only for sales of the "Product," defined in paragraphs 1.b and 1.c of the Agreement as "HotDocs templates *created by [LawMode]*" (emphasis added). Here, the undisputed record shows, and the Court has already held, that LexisNexis is distributing its own work, not templates created by LawMode.[4]

In short, LawMode's breach-of-contract-by-misappropriation claim is a sleight-of-hand: it does not rest on any arguably breached provision of the Agreement – notwithstanding LawMode's confusing but baseless effort to dress up its claim in the garb of the Agreement, which led the Court into error – and if it states any claim at all it is only a claim for misappropriation classically preempted by 17 U.S.C. § 301. Where, as here, a claim complains of misappropriation and conversion by copying a copyrighted work, but the alleged contract lacks any promise not to copy, the claim is doubly invalid as a matter of law *even if dubbed by the*

---

[4]    It is not disputed that LexisNexis and its predecessors paid LawMode for all "Product," that is, all product distributed by LexisNexis during the term of the Agreement that embodied HotDocs templates created by LawMode. LawMode plainly has no right – contractual or otherwise – to be paid for products distributed by LexisNexis after the termination of the Agreement that were independently created by LexisNexis and that the Court has held do not infringe any LawMode "copyright."

*pleader as a "breach of contract claim"* – because the contract lacks any promise arguably

breached, and also because, without a pertinent promise arguably breached, the claim is revealed

as nothing more than a dressed up misappropriation claim, which is preempted. *Stromback v.*

*New Line Cinema*, 384 F.3d 283, 301-02 (6th Cir. 2004) (claims whose essence is copying,

including misappropriation claims, are "preempted by the Copyright Act because they allege an

act that infringes upon one of the exclusive rights set forth in Section 106"); *Kregos v. Associ-*

*ated Press*, 3 F.3d 656, 666 (2d Cir. 1993) (holding misappropriation claim "grounded solely in

the copying of a plaintiff's protected expression" was preempted by § 301 of Copyright Act),

cert. denied, 510 U.S. 1112(1994); *cf. Wrench LLC v. Taco Bell Corp.*, 256 F.3d at 457-58

("Although the vast majority of contract claims will presumably survive scrutiny . . . nonetheless

pre-emption should continue to strike down claims that, though denominated 'contract,' nonethe-

less complain directly about the reproduction of expressive materials") (citing 1 M. & D.

Nimmer, Nimmer on Copyright § 1.01[B][1][a] at 1-22).

## Conclusion

The Court should grant rehearing and grant summary judgment to LexisNexis on the

breach-of-contract-by-misappropriation claim alleged in paragraph 48.b of the Complaint.

By:    James E. Stewart (P23254)
           Laurie Michaelson
           Butzel Long
           350 South Main Street, Suite 300
           Ann Arbor, Michigan 48104
           *Attorneys for Defendants*

December 17, 2004

*Of Counsel:*
Charles S. Sims
Frank P. Scibilia
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036
(212) 969-3950

To:    John G. Posa
       GIFFORD, KRASS, GROH, SPRINKLE. ANDERSON & CITKOWSKI, P.C.
       280 N. Woodward, Suite 400
       Birmingham, Michigan 48009

7

**EXHIBIT A**
**TO DEFENDANT LEXIS/NEXIS'**
**MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR RECONSIDERATION**

In the United States District Court
For the Eastern District of Michigan
Southern Division at Ann Arbor

Ross Brovins & Oehmke, P.C. d/b/a
LawMode, a Michigan Corporation,
　　　Plaintiff,

v.

Lexis/Nexis, a Division of Reed Elsevier
Group, PLC, a British Corporation, and owner
of Matthew Bender & Co., Inc., a New York
Corporation, d/b/a Capsoft Development
Corporation,
　　　Defendant.

Case No.

Hon.　　　**03 - 74474**
U.S. District Judge

NANCY G. EDMUNDS[1]
MAGISTRATE JUDGE PEPE

Allen M. Krass (P16218)
John G. Posa (P49445)
*Attorneys for Plaintiff*
Gifford, Krass, Groh, Sprinkle, Anderson, &
Citkowski, P.C.
101 N Main St. #800
Ann Arbor MI 48104
(734) 913-9300

---

## COMPLAINT

Plaintiff Ross Brovins & Oehmke, P. C. d/b/a LawMode ("LawMode"), as against Defendant

Lexis/Nexis, a Division of the Reed Elsevier Group PLC ("Lexis") and Matthew-Bender & Co., Inc.

d/b/a Capsoft Development Corporation alleges the following:

### Parties

1.　Plaintiff LawMode is a Michigan corporation with its registered office at 3885 Waldenwood

　　Dr., Ann Arbor, Michigan 48105.

2.　Defendant Lexis/Nexis is a wholly owned Division of Reed Elsevier, PLC, a British

corporation, with offices in the United States (located at 125 Park Avenue, 23rd floor, New York, NY 10017). As to a certain Agreement (as amended) between LawMode and Capsoft Development Corporation (more fully pled below):

    a.    Lexis/Nexis (Lexis/Nexis) is the successor-in-interest to Matthew Bender & Co., Inc. (Matthew-Bender) under that Agreement (as amended), and

    b.    Matthew Bender & Co., Inc. is the successor-in-interest to Capsoft Development Corporation (Capsoft) under that Agreement (as amended).

    c.    Lexis/Nexis, Matthew-Bender and Capsoft are jointly and severally called Defendant or Lexis/Nexis.

### Jurisdiction

3.    Jurisdiction is conferred on this Court as:

    a.    A federal question as Plaintiff's claim is related to copyright [28 U.S.C. §1338(a)];

    b.    To any pendent state claims, because there is also complete diversity of citizenship among all Plaintiffs and all Defendants and the amount in controversy exceeds $75,000.00.

4.    Venue is proper as Defendant is committing acts of copyright infringement [28 U.S.C. §1400(b)] within Washtenaw County, Michigan.

### Factual Background

5.    Plaintiff Ross, Brovins & Oehmke, P.C. is a Michigan professional service corporation d/b/a LawMode.

    a.    LawMode is solely owned by attorney Joan M. Brovins who is a co-author of various

law-related works.[1]

b.  Attorney Thomas H. Oehmke is associated with LawMode and is a co-author of the
    above works with attorney Brovins, as well as being the author or coauthor of other
    legal treatises;[2] the contributing editor of other legal works,[3] as well as certain
    computer-based legal works;[4] a regular contributor to *AmJur Model Trials*;[5] and the
    author of many articles appearing in various periodicals.

### LawMode's Copyrighted Work

6.  In 1997 and for five years thereafter, Plaintiff created, modified, updated and supplemented
    a software Product which was commercially sold by Defendant and was last entitled
    *LexisNexis™ Automated Michigan Forms* (2543 Release August 2001 ISBN 82054-32-84)

---

[1] *The Trial Practice Guide* (ABA and Lexis/Nexis), *Dr. Death: Dr. Jack Kevorkian's &
Death* (Hollywood Press), *Divorce Dirty Tricks* (Hollywood Press), and *SmartLien* (software
automating Michigan construction liens).

[2] *Commercial Arbitration* (West Publishing), *Sex Discrimination in Employment* (Trends
Pub.), *Michigan Divorce Manual* (West Pub.), *Michigan Incorporation Manual* (ALRI), *Michigan
Appeals Manual* (ALRI).

[3] *Williston on Contracts 4* $^{th}$ (Thomson-West, 2001-2004) volumes on *Commercial
Arbitration* (Vol. 56), *Labor Arbitration* (Vol. 57), *Mistake: Reformation and Recision* (Vol. 56);
and *Impractibility* (Vol. 30); *Nimmer – Commercial Asset Based Financing* chapters on aviation
and vessel financing (Clark Boardman Callaghan, 1997); *Michigan Corporation Law*, by Schmidt
& Cavitch (Matthew-Bender, 1981-1983 supplements).

[4] *Intellectual Property & Licensing Transactions, Business Counsel & Law* chapters on
trademarks, tradenames, and copyrights (Clark Boardman Callaghan).

[5] "Appealing Adverse Arbitration Awards," 94 *American Jurisprudence (Am Jur) Trials*
– (2004); "Arbitrating Securities Industry Disputes," 89 *Am Jur Trials* 55 (2003); "Arbitration
Highways to the Courthouse – a Litigator's Roadmap," 86    *Am Jur Trials* 111 (2002);
"Arbitrating International Claims–at Home and Abroad," 81 *Am Jur Trials* 1 (2001); "Arbitration
Evidence: Putting Your Best Case Forward," 76 *Am Jur Trials* 1 (2000); "Alternative Dispute
Resolution: Commercial Arbitration," 44 *Am Jur Trials* 507 (1992).

bearing the copyright Notice "© LawMode" embedded in the software ("LawMode's Copyrighted Work").

7.    Since 2000, Lexis/Nexis has published and sold LawMode's Content under three titles.[2]

8.    HotDocs® is a computer software application licensed by Defendant used by Plaintiff to automate the generation of legal forms.

9.    Until this business relationship with LawMode, Capsoft had not used HotDocs® to automate a comprehensive set of state-specific forms in integrated practice areas to the commercial legal market.

10.    From 1997 to 2002, the number of automated legal forms in LawMode's Copyrighted Work grew from several hundred to more than 500 legal forms templates, many being automated versions of forms from the Michigan State Court Administrative Office (SCAO), the Michigan Dept. of Treasury, the Michigan Corporation and Securities Bureau, as well as dozens of LawMode's own proprietary legal forms created and automated by LawMode for use under the Federal Rules of Civil Procedure and the Michigan Court Rules, all usable both with Word™ and WordPerfect™ word processing software.

11.    LawMode used HotDocs® to automate legal forms by creating computer templates (here called "Content") that collected client and case specific data through a series of unique menus so that such data could be entered on successive legal forms as a case progressed (e.g.,

---

[1] "Content" means HotDocs® templates created by LawMode which are included in LawMode's Copyrighted Work.

[2] *Michigan Practice Forms on HotDocs®*; *Michigan Automated Practice Forms from Lexis-Nexis* (2543 Release 02-28-01 ISBN 82054-32-84); *LexisNexis Automated Michigan Forms* (2543 Release August 2001 ISBN 82054-32-84).

from summons and complaint through judgment and collection); such data were expressed, for example, on legal forms in case captions, attorney and party data, and other relational database entries that could be stored and reused).

12.    Consolidating LawMode's Content and templates of SCAO and other legal forms, Defendant sold computer diskettes and, later, CDROM versions of hundreds of integrated legal practice forms (in such practice areas as probate, incorporations, civil litigation, domestic relations, landlord-tenant evictions, debt collection, wills and trusts, etc.).

13.    LawMode's Copyrighted Work:

a.    Allowed attorneys, paralegals, legal secretaries, judges' staff, court clerks and Friend of the Court personnel to collect data and make decisions in generating legal forms;

b.    Automatically generated signature-ready, complex SCAO and other legal forms with data variables that would be entered only once in a given case;

c.    Reflected the intuitive guidance of LawMode's practicing, licensed Michigan attorneys Brovins/Oehmke;

d.    Presented menus that were expressions that led computer end-users through a computerized process of collecting logically-sequenced questions using intuitive data clusters;

e.    Allowed end-users to make legal decisions under Michigan law in completing sophisticated and customized SCAO and other legal documents and forms, assuring that each answer or check box was consistent in relation to other parts of the same form and to other forms filed in the same case.

f.    Expressed methods of computing values, determined what text to include or exclude

Page 5 of 29

based on end-user answers, eliminated bias with gender-neutral forms, and eliminated the need to update verb tenses.

g. Contained expressions reflecting the expertise and attorney intelligence gained from decades of litigation practice in federal and state courts by LawMode's author/attorneys Brovins/Oehmke.

## Capsoft

14. Defendants and Ross Brovins & Oehmke, P.C. d/b/a/ LawMode made in Michigan these agreements:[1]

a. Content Developer Agreement (27 February 1997);

b. Amendment (05 May 1997) to the *Content Developer Agreement* which added additional terms and conditions and amended the *Content Developer Agreement*;

c. Amendment (11 August 1997) to the Content Notice Chart (which was an appendix to the *Content Developer Agreement*) and which Amendment added new libraries on Employment Handbook, Michigan Divorce, and Michigan Civil Litigation;

d. Amendment (21 July 1998) to the Content Notice Chart (which was an appendix to the *Content Developer Agreement*) and which Amendment added a new library for Michigan Construction Liens, confirmed Defendants' acceptance of a new library on divorce plus a major revision of the forms constituting the probate and library.

e. Renewal of the amended *Content Developer Agreement* with Lexis/Nexis (under ¶ 7(a), evergreen clause):

i. On 27 February 2000 for a one year term and, again,

---

[1] See Exhibit A.

        ii.     On 27 February 2001 for an additional one year term.

15.    Capsoft Development published LawMode's Content and templates as separate libraries of forms (i.e., civil litigation, estate planning, landlord/tenant) bearing the copyright Notice © LawMode.

16.    On 11 August 1997, Capsoft agreed to accept new libraries of forms from LawMode (including Employment Handbook, Michigan Divorce and Michigan Civil Litigation).

17.    Capsoft breached the amended Agreement in these and other ways by:

    a.    Providing prospective customers with complimentary copies of LawMode's Copyrighted Work as a promotion to attract new subscribers of Capsoft to purchase other Capsoft software without Plaintiff's consent and without paying Plaintiff any licensing fees (in violation of ¶ 4 of the Agreement).

    b.    Publishing templates containing content unapproved by LawMode (in violation of ¶ 2(b) of the amended Agreement).

    c.    Failing to use its "best efforts" to market LawMode's Copyrighted Work (in violation of ¶ 3(c) of the amended Agreement).

    d.    Failing or neglecting to produce quarterly licensing statements and failing to timely pay LawMode its earned licensing fee (in violation of ¶ 4(d) of the amended Agreement).

    e.    Failing to publish certain Content per the amended Agreement (i.e., incorporations, collection of judgment, real estate) and not timely publishing other libraries it later accepted as Content (i.e., Employment Handbook, Michigan Divorce, and Michigan Civil Litigation).

f.    Failing to timely and correctly publish revisions, updates or supplements of LawMode's Content and templates in a form approved by LawMode (in violation of ¶ 1(b) of the Agreement as amended).

18.    Capsoft fraudulently induced LawMode to continue operating under the parties' Agreement, promising that it would soon be purchased by a large national legal publisher (i.e., Matthew Bender & Co., Inc.) which had the capability and resources to fulfill all of the parties' contract terms.

### Capsoft is Subsumed by Matthew-Bender

19.    In Fall 1997, Capsoft was acquired by Matthew Bender & Co., Inc. ("Matthew-Bender") (which became the successor-in-interest to the amended Agreement).

20.    Matthew-Bender fraudulently induced LawMode to continue operating under the parties' Agreement in this fashion:

    a.    On 21 July 1998, Matthew Bender & Co., Inc. reaffirmed its amendment of the *Content Developer Agreement* to accept as Content revised probate forms and new libraries of forms on divorce and construction liens;

    b.    On April 5-6, 1999, Matthew Bender & Co., Inc. reaffirmed Capsoft's Amendment (11 August 1997) of the *Content Developer Agreement* to add a library of divorce forms;

    c.    Matthew-Bender promised that if LawMode added a new divorce library of forms, and revised and added dozens of new probate forms (issued under a revised Michigan Probate Code), and made other enhancements to LawMode's Content, then Matthew-Bender, in turn, would launch a new, consolidated CDROM product and Matthew-

Page 8 of 29

Bender would apply renewed marketing muscle to meet its "best efforts" contractual requirement (see ¶ 3(c) amended Agreement).

d.    Matthew-Bender promised to have the consolidated CDROM Product ready for distribution at the State Bar of Michigan annual convention (September 1999).

     i.    Thus, at this Convention LawMode took dozens of orders from attorneys and law firms based on this Matthew-Bender promise.

e.    Matthew-Bender missed its deadline and never fulfilled its promise but, instead, sold its assets to Lexis/Nexis (which finally issued that CDROM in April 2000).

f.    Just as with Capsoft, Matthew-Bender also failed to publish certain Content per the amended Agreement (i.e., incorporations, collection of judgment, real estate) and did not publish other libraries previously accepted as Content (i.e., construction liens, employment handbook, divorce).

21.    Matthew-Bender breached the amended Agreement and its other promises in these and other ways by:

a.    Failing to timely and correctly publish revised or updated versions of LawMode's content and templates (in violation of ¶ 1(b) of the Agreement) or in a form approved by LawMode (in violation of ¶ 1(b) of the amended Agreement).

b.    Failing to use its "best efforts" to market LawMode's Copyrighted Work (in violation of ¶ 2(b) of the amended Agreement).

c.    Failing or neglecting the make timely quarterly sales reports and pay licensing fees (in violation of ¶ 4(d) of the Agreement).

22.    Matthew-Bender fraudulently induced LawMode to continue operating under the parties'

amended Agreement promising, just as did Capsoft, that Matthew-Bender would soon be purchased by a large national legal publisher (i.e., Lexis/Nexis) which had the capability and resources to fulfill all of the parties' contract terms.

Matthew-Bender is Subsumed by Lexis/Nexis

23.     In late 1999, Matthew-Bender was acquired by Lexis/Nexis (which became the successor-in-interest to the amended Agreement).

24.     In 1999, Lexis/Nexis published Plaintiff's *Michigan Practice Forms on HotDocs®* (containing more than 370 of Plaintiff's forms on CDROM in seven legal practice areas) bearing the copyright Notice © LawMode.

25.     In March 2000, Lexis/Nexis released an updated and supplemented CDROM entitled *Michigan Practice Forms on HotDocs®* bearing the copyright Notice © LawMode.

26.     Lexis/Nexis twice automatically renewed the Content Developer Agreement (under ¶ 7(a), evergreen clause) for a one year term (on February 27, 2000 and 2001).

27.     Lexis/Nexis released four expanded, revised, updated and supplemented CDROM versions of LawMode's Copyrighted Work in January 2000,[1] April 2000,[2] February 2001,[3] and August 2001,[4] all bearing the copyright Notice "© LawMode" embedded in the software and visible on the first screen of the forms library.

---

[1] *Michigan Practice Forms on HotDocs®.*

[2] *Michigan Practice Forms on HotDocs®*

[3] *Michigan Automated Practice Forms from Lexis-Nexis* (2543 Release 2-28-2001, ISBN 82054-32-84).

[4] *LexisNexis™ Automated Michigan Forms* (2543 Release August 2001, ISBN 82054-32-84).

28. Two months after publishing the August 2001 version of LawMode's Copyrighted Work, Lexis/Nexis wrote it would terminate its Agreement with LawMode (See Exhibit B), stating that Lexis/Nexis was "... in the process of developing a revised automated forms strategy and the Michigan product, in its current configuration, does not meet the company's requirements."

29. After LawMode's Agreement was terminated, Lexis/Nexis released:

   a. In July 2002, a new CDROM ("Derivative Work") entitled *Lexis/Nexis™ Automated Michigan SCAO Forms* (2584 Release ISBN 82055-44-48) which infringes LawMode's Copyrighted Work.

   b. In April 2003, an update to the ("Derivative Work") entitled *Lexis/Nexis™ Automated Forms* (2584 Release ISBN 82055-44-48) which infringes on LawMode's Copyrighted Work.

30. Lexis/Nexis breached the amended Agreement in these and other ways by:

   a. Attempting to convert to its own use LawMode's forms without paying licensing fees by disavowing the amended Agreement while still selling Plaintiff's Content.

   b. Failing to update the Content and templates or in a manner approved by LawMode (in violation of ¶ 1(b) of the amended Agreement).

   c. Continuing to sell LawMode's Copyrighted Work without updated/supplemented forms during 2002 until its own July 2002 Derivative Work was published.

   d. Failing to use its "best efforts" to market LawMode's Copyrighted Work (in violation of ¶ 2(b) of the amended Agreement).

## Economic Damages

31. Plaintiff suffered these and other economic damages:

   a.  LawMode and its author/attorneys Brovins/Oehmke invested, on average, more than
       40 hours per week collectively during the five years from 1997 through 2002 to
       design, create, update/supplement, train and retrain Defendant's staff in how to
       automate Michigan SCAO forms and to correct their work, as well as to promote,
       explain, market and sell LawMode's Copyrighted Work.

   b.  LawMode's Copyrighted Work is valued at $2.6 million by investing, on average,
       some 40 hours per week for five years (valued at $250/hour).[1]

   c.  LawMode's Copyrighted Work generated $205,000 or more in net revenue to
       Defendant from its sale and more than $63,000 in licensing fees to Plaintiff as
       follows:

|         | Defendant  | Plaintiff      |                                     |
|---------|------------|----------------|-------------------------------------|
| **Year** | **Net Sales** | **Licensing Fees** |                                 |
| 1997    | $ 4,266    | $ 1,280        |                                     |
| 1998    | $ 21,188   | $ 6,365        |                                     |
| 1999    | $ 10,665   | $ 7,565        |                                     |
| 2000    | $ 48,096   | $12,185        |                                     |
| 2001    | $ 71,760   | $21,628        |                                     |
|         |            | **            | Defendant terminates Agreement      |
| 2002    | $48,345    | $14,504        | *License fees paid after termination* |
| Total   | $204,321   | $63,527        |                                     |

32. On 02 January 2002, Plaintiff wrote to Defendant's Legal Counsel (John Battles, Sr.)
    Reciting that "[t]hese facts support not only a breach of contract, and a potential copyright
    violation but, given the breach of the covenant of good faith dealing, are so egregious that

---

[1] 25 hours per week to create and supplement LawMode's Copyrighted Work plus 15 hours
per week devoted to research, marketing, sales, promotion and other product development efforts.

exemplary damages are appropriate," but Battles offered no substantive response.

## COUNT I

### COPYRIGHT INFRINGEMENT

LawMode incorporates the above paragraphs by reference and further states:

33.  Defendant breached the exclusive right to prepare a derivative work as Plaintiff LawMode is the owner of United States Copyright Registration No. TX 5-777-049 for the Content and templates only contained in LawMode's Copyrighted Work entitled *LexisNexis™ Automated Michigan Forms* (2543 Release August 2001 ISBN 82054-32-84).[1]

34.  Without LawMode's permission or authorization, Lexis/Nexis infringed LawMode's Copyrighted Work by wrongfully incorporating portions of LawMode's Copyrighted Work into various Derivative Works which are substantially similar to LawMode's Copyrighted Work and did so without compensation to LawMode.

35.  Lexis/Nexis copied, published, distributed and sold for its own commercial gain portions of LawMode's Copyrighted Work, and did so to the same subscribers (i.e., installed user base) who had purchased or obtained LawMode's Copyrighted Work in these as well as other ways:

   a.  In July 2002 through a CDROM entitled *LexisNexis™ Automated Michigan SCAO Forms* (2584 Release July 2002, ISBN 82055-44-48) ("Derivative Work") and in various revisions, updates and supplements (including April 2003 and thereafter).

   b.  On the Internet for sale by the form and otherwise.

   c.  By complimentary one week trials over the Internet and otherwise to entice potential

[1] See Exhibit C.

Page 13 of 29

subscribers to purchase LawMode's Copyrighted Work from Lexis/Nexis.

    d.    In distributing hundreds of complimentary copies to attorneys who participate in various training seminars as an enticement to get those attorneys to purchase Lexis/Nexis updates to the Derivative Work.

36.    Some 338 forms on the Derivative Work of Lexis/Nexis (or 84% of Lexis/Nexis forms) were substantially copied from the compilation of forms on LawMode's Copyrighted Work:

| Forms | Percent | Compilation |
|---|---|---|
| 403 | 100% | Forms on Lexis/Nexis Derivative Work |
| - 40 | - 10% | New forms LexisNexis added (not on LawMode's Copyrighted Work) |
| - 25 | - 6% | New forms issued after LawMode's Copyrighted Work was published |
| 338 | 84% | Lexis/Nexis Derivative Work copied from LawMode's Copyrighted Work |

37.    Lexis/Nexis exerted control over the expression and selection of the expression in the forms on its Derivative Work and could have chosen (but did not) to express the automation of SCAO forms in a manner different from that used by LawMode; instead, Lexis/Nexis infringed LawMode's Copyrighted Work and expressed the automation of the forms on its Derivative Work in a manner that was substantially similar to that of LawMode's Copyrighted Work.

38.    Lexis/Nexis directly copied and misappropriated portions of the expressive content of LawMode's Copyrighted Work by:

    a.    Including Content, templates, certain Script (or computer code) used to express the same ideas in substantially the same fashion as did LawMode;

    b.    Copying LawMode's compilation of various libraries and sub-libraries of SCAO forms, presenting these in substantially the same groupings as presented in LawMode's Copyrighted Work;

Page 14 of 29

    c.     Copying LawMode's user interfaces, menu layouts, specific data fields for users to complete, sequences of menus, and other "look and feel" (and relational database) aspects of LawMode's expression.

39.    Some 338 forms on the infringing Lexis/Nexis Derivative Work were a substantially similar expression as those same forms in LawMode's Copyrighted Work.

40.    Defendant's infringement of LawMode's Copyrighted Work is causing ongoing harm to Plaintiff (including lost sales, profits and licensing fees), harms LawMode's reputation, and disparages LawMode's author/attorneys Brovins/Oehmke.

41.    Defendant's deletion of dozens of LawMode's proprietary templates (and the failure of Lexis/Nexis to supplement its Derivative Work semi-annually or as revised and new forms are released by SCAO) diminishes the value of the Derivative Work, diminishing its sales and harms LawMode's reputation and that of its author/attorneys Brovins/Oehmke in the legal and publishing community.

42.    Defendant's infringement of LawMode's Copyrighted Work is willful and deliberate, harms LawMode and offers no adequate remedy at law.

## COUNT II

## VIOLATIONS OF THE LANHAM ACT

LawMode incorporates the above paragraphs by reference and further states:

43.    In connection with its marketing, sales, and advertising efforts, Defendant Lexis/Nexis has utilized words, terms, symbols, devices, and combinations thereof that constitute the proprietary intellectual property of LawMode, and without LawMode's consent, authorization or license.

44.    Defendant's actions have caused, and are likely to continue to cause, confusion, mistake, or deception as to the affiliation, the connection or association of Plaintiff and Defendant.

45.    Defendant's actions have caused confusion as to the origin, sponsorship, or approval of the commercial activities they conduct and offer the public in general and the legal community in Michigan specifically.

46.    Defendant has misrepresented in its commercial advertising and marketing the nature, characteristics, and qualities of their goods, services, and commercial offerings which are now diminished as compared to the content created by LawMode.

47.    By virtue of these and other of Defendant's misappropriation and misrepresentation, Defendant has violated the federal Lanham Act (15 U.S.C.A. § 1125) and is entitled to:

    a.    injunctive relief;

    b.    an accounting including an audit as permitted under ¶ 5 of the Agreement (27 February 1999) of all monies the Defendant has obtained by misappropriating LawMode's proprietary and intellectual property;

    c.    all other relief available to Plaintiff under the Lanham Act as the Court deems just.

### COUNT III

### BREACH OF CONTRACT

LawMode incorporates the above paragraphs by reference and further states:

48.    As successor-in-interest to the Content Development Agreement between LawMode and Capsoft, Defendant Lexis/Nexis is liable for express and implied contractual obligations to LawMode that were not met, including those breaches alleged above and others, including:

    a.    Modification of Content without Plaintiff's approval (violating ¶ 2(b) of Amendment

dated 04 May 1997) by failing to publish and market the final templates as approved by LawMode;

b.   Misappropriating LawMode's content by converting some or all of it to Defendant's own use (violating ¶ 2(c) of amended Agreement dated 04 May 1997) as the parties' Agreement states that LawMode as "Developer owns all content";

c.   Continuing to sell some $14,507 or more of LawMode's Copyrighted Work (including Contents and templates) after terminating the Agreement on 26 February 2002 (with such sales violating ¶ 7(d) of the Agreement dated 27 February 1997) which states, "Upon termination of this Agreement for any reason, Capsoft shall cease marketing and distribution of Products"; Lexis/Nexis remitted only $4,352 to Plaintiff in licensing fees.

d.   Marketing Defendant's Derivative Work to the same subscribers (i.e., installed computer user base) whose product loyalty and initial purchases were earned by LawMode's creative and marketing efforts from 1997 through 2002.

e.   Failing to meet promised production deadlines which discouraged new and renewal subscribers and which diminished the reliability of LawMode's Copyrighted Work in the eyes of purchases and potential purchasers.

f.   Failing to publish certain libraries of forms (e.g., real estate, construction liens, employment handbook).

g.   Upon information and belief, by failing to pay LawMode a "50% internet" licensing fee (up from 30%) for sales of LawMode's Copyrighted Work on the Internet.

49.   Defendant Lexis materially and anticipatorily breached its contractual obligations by virtue

Page 17 of 29

of these and other unlawful acts and omissions by which LawMode has been damaged and

for which Defendant should be liable, including *quantum meruit* damages.

## COUNT IV

### UNJUST ENRICHMENT

LawMode incorporates the above paragraphs by reference and further states:

50.    To the extent there is no express contract in certain regards between the parties, then

Defendant has a quasi-contractual obligation, on which a recovery may be had, for unjust

enrichment because:

a,     Lexis/Nexis has received certain benefits from LawMode by using, marketing, and

selling the Derivative Work that embodies materials from LawMode's Copyrighted

Work and has done so without LawMode's consent by converting to its own use

certain of Plaintiff's trade practices, methods, processes and property.

b.     Lexis/Nexis has enjoyed this benefit for its own commercial gain and has been

unjustly enriched to the detriment of LawMode.

c.     It is inequitable to LawMode that Lexis/Nexis should be allowed to retain these

benefits (including, but not limited to, sales revenues) which should have been

directed to LawMode and should now be disgorged.

51.    The law should operate to imply a contract to prevent Defendant's unjust enrichment.

## COUNT V

### COMMON LAW UNFAIR COMPETITION

LawMode incorporates the above paragraphs by reference and further states:

52.    Defendant Lexis/Nexis has engaged and continues to engage in unfair and unethical trade

Page 18 of 29

practices (including unfair competition consisting of acts of fraud, bad-faith misrepresentation, misappropriation, or product confusion) which are harmful to LawMode's business and the public in general.

53.   Defendant's acts (as alleged above and otherwise) are fraudulent, deceptive and misleading to the legal community including:

    a.   Lexis/Nexis has been advertising, marketing, selling, and otherwise holding out LawMode's proprietary intellectual property as its own.

    b.   There exist confusingly similar similarities between LawMode's Copyrighted Work [entitled *Lexis/Nexis™ Automated Michigan Forms* (2543 Release August 2001) regarding which LawMode has developed and registered a copyright] as compared to Lexis/Nexis Derivative Work [entitled *Lexis/Nexis™ Automated Michigan SCAO Forms* (2584 Release July 2002)].

    c.   Lexis/Nexis has enjoyed the benefit of LawMode's marketing and other business expertise and practices and has been able to use these in its Derivative Work, its promotional literature, sales, marketing, internally with staff and otherwise.

54.   Defendant is deceptively advertising, marketing and selling LawMode's proprietary intellectual property (in the guise of Lexis/Nexis Derivative Work) to former subscribers to LawMode's Copyrighted Work and Lexis/Nexis by:

    a.   Selling its Derivative Work to the subscribers of LawMode's Copyrighted Work and representing the Derivative Work to be a supplement or update to LawMode's Copyrighted Work.

    b.   Granting a discount to LawMode's subscribers to continue their subscriptions to

Page 19 of 29

LawMode's Copyrighted Work supposedly by purchasing Defendant's Derivative Work(s).

c. Using a title for its Derivative Work (*Lexis/Nexis™ Automated Michigan SCAO Forms*) that is confusingly and substantially similar to that of LawMode's Copyrighted Work (*Lexis/Nexis™ Automated Michigan Forms*).

d. Using a confusingly similar color and image on the art work on the Derivative Work CDROM as appeared on LawMode's Copyrighted Work.

e. Pricing the Derivative Work ($300) at the same price point as LawMode's Copyrighted Work ($295).

f. As to the dozens of proprietary legal forms that LawMode crafted, Defendant failed to notify subscribers to its Derivative Work that:

    i. Defendant no longer provided updates and supplements to LawMode's proprietary forms, or that

    ii. Installing Defendant's Derivative Work would delete LawMode's proprietary forms from their computers, thus, depriving subscribers of their right to use and enjoy LawMode's proprietary forms (which subscribers had previously purchased), damaging the reputation of LawMode and Brovins/Oehmke as template authors.

55. Defendant engaged in various unlawful, unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of its trade or commerce which have damaged Plaintiff including:

a. Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the Derivative Work [Cf. M.C.L.A. § 445.903(1)(a)].

b.   Using deceptive representations in connection with the Derivative Work [Cf. M.C.L.A. § 445.903(1)(b)].

c.   Representing that the Derivative Work had the sponsorship or approval of LawMode [Cf. M.C.L.A. § 445.903(1)(c)].

d.   Impliedly representing that the Derivative Work was of a particular standard, quality, or grade in that it contained LawMode's proprietary forms when, in fact, the Derivative Work had been stripped of all of LawMode's proprietary forms [Cf. M.C.L.A. § 445.903(1)(e)].

e.   Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer [Cf. M.C.L.A. § 445.903(1)(s)] namely that:

   i.   all of LawMode's proprietary Michigan practice forms found in LawMode's Copyrighted Work had been stripped from the Derivative Work, and

   ii.   installing the Derivative Work would delete LawMode's proprietary forms from a subscriber's computer.

f.   Making a representation of fact or statement of fact material to subscribers to the Derivative Work such that a subscriber reasonably believes the Derivative Work to be other than it actually is [Cf. M.C.L.A. § 445.903(1)(bb)] (i.e., an update or supplement of LawMode's Copyrighted Work).

g.   Failing to reveal facts that are material to subscribers of the Derivative Work in light of representations of fact made in a positive manner [Cf. M.C.L.A. § 445.903(1)(cc)].

56.   These and other representations by Lexis/Nexis as to its Derivative Work creates a likelihood

Page 21 of 29

of confusion in the marketplace.

57.    LawMode's business and the reputations of its author/attorneys Brovins/Ochmke have been
damaged by these acts of unfair competition by Lexis/Nexis.

## COUNT VI

### FRAUD AND MISREPRESENTATION

LawMode incorporates the above paragraphs by reference and further states:

58.    Lexis/Nexis engaged in fraud and misrepresentation in this fashion and otherwise:

    a.    Making some representation(s) about past or existing material facts to LawMode.

    b.    Some of these representations were false and actually deceived Plaintiff.

    c.    When made, Lexis/Nexis knew that some of the representations were false, or were
made recklessly, or were made without any knowledge of their truth or falsity, or
were made as positive assertions.

    d.    Lexis Nexis made these representation intending that LawMode should act upon such
representation(s).

    e.    LawMode acted in reliance on such representation(s) to its detriment and that of its
authors/attorneys Brovins/Ochmke.

    f.    LawMode suffered damages as a result of Defendant's fraud and misrepresentation.

59.    Defendant made material representations and promises, and performed acts and omissions
upon which Plaintiff detrimentally relied including those pled above and these:

    a.    In 2000, Lexis/Nexis mailed invitations to 8,000 attorneys to meet LawMode's
author/attorneys Brovins/Ochmke and view a demonstration of LawMode's
Copyrighted Work at the State Bar of Michigan annual Convention (that year in

Page 22 of 29

Detroit).

    b.    Lexis/Nexis fraudulently induced LawMode's attorneys Brovins/Oehmke to prepare for, travel to, attend and work this Convention to promote LawMode's Copyrighted Work.

    c.    After a few hours in the exhibitor booth, a sales manager of Lexis/Nexis refused to allow Brovins/Oehmke to return to the booth, stating that the interest in LawMode's forms was distracting Conventioneers from purchasing a product called Lexis One™ (for which sales staff were paid a substantially greater commission than for selling LawMode's Copyrighted Work).

60.    Defendant fraudulently induced Plaintiff LawMode to develop and revise hundreds of templates, improving the LexisNexis Product and for LawMode to continue to do so even through August 2001 when LexisNexis knew (or should have known) that it intended to terminate the LawMode Agreement by a letter sent weeks later in November 2001.

61.    Defendant encouraged Plaintiff to invest hundreds of hours to comment upon, edit and contribute extensively to its sales, marketing and telemarketing plans without compensating LawMode.

62.    Defendant encouraged LawMode to send author/attorneys Brovins/Oehmke to multiple seminars, regional, specialty and state bar association meetings and conventions, sales associates meetings, lectures and other marketing exhibitions to promote LawMode's Copyrighted Work, indicating that this would promote the same and reputation of LawMode's Copyrighted Work and convince subscribers that LexisNexis was committed to the long-term marketing of LawMode's Copyrighted Work.

Page 23 of 29

63.  LawMode's detrimental reliance on Defendant's misrepresentations inured to the benefit of
     Lexis/Nexis.

64.  Capsoft, Matthew-Bender and LexisNexis have each fraudulently induced LawMode to enter
     into or continue operating under the parties Agreement and amendments.

     a.  As relief, LexisNexis should be equitubly estopped from enforcing any provision of
         this Agreement as amended which this Court finds inequitable to LawMode.

     b.  As relief, this Court is asked to rescind or reform any such provision of the amended
         Agreement that is inequitable to LawMode in light of the facts pled.

### COUNT VII

### BREACH OF DUTY OF GOOD FAITH & FAIR DEALING

LawMode incorporates the above paragraphs by reference and further states:

65.  Where there were no specific contractual provisions binding the parties, or where
     Lexis/Nexis had the discretion with regard to certain contract provisions, Lexis/Nexis was
     required to act in good faith and deal fairly with LawMode.

66.  Lexis/Nexis was duty-bound to exercise its discretion honestly and in good faith and to deal
     fairly in this contractual relationship with LawMode, however, Lexis/Nexis breached that
     duty in the ways pleaded above and otherwise.

67.  · Since 1997, Capsoft and its successors have provided LawMode with a complimentary copy
     of HotDocs® Professional Edition (which LawMode used to create Content and templates
     under the Agreement).

     a.  Capsoft, Matthew-Bender and Lexis/Nexis have each, in their turn, failed to market
         LawMode's construction lien templates.

b. In 1999, LawMode sought and was granted a license to resell HotDocs® (for a license fee of $10/copy) along with LawMode construction lien templates (marketing under the name Smart*Lien*™).

c. As part of that licensing arrangement, Defendant agreed to continue to provide LawMode with a complimentary copy of the current versions of HotDocs® Professional Edition and has done so until 2001.

d. LawMode has paid all licensing fees owed to Defendant.

e. In 2002 and, again, in 2003, LawMode asked Defendant to honor its commitment for a complimentary copy of the most current versions of HotDocs® Professional Edition (Ver. 6.0), however, Defendant not only failed or neglected to give LawMode a complimentary copy, it refuses to communicate with LawMode to facilitate the purchase of that software.

68. Certain obligations under the amended Agreement were discretionary on the part of Defendant; however Defendant did not engage in the good faith performance of these discretionary duties and breached its duty of good faith dealing in these and in other ways as to which no express contract terms govern Defendant's rights and obligations:

a. While marketing LawMode's Copyrighted Work, Defendant concurrently licensed the nonprofit Michigan Institute of Continuing Legal Education (ICLE) as a HotDocs® reseller.

i. In 1997, ICLE released products (i.e., probate and debt collection).

ii. These ICLE products were confusingly similar to LawMode's Copyrighted Work, directly competed with LawMode's Copyrighted Work, diverted

Page 25 of 29

licensing fees which could have been earned by LawMode.

b.  Defendant failed to negotiate about, or to renew, the amended Agreement, even though that Agreement was twice extended for additional terms and despite LawMode having invested more than $2.08 million in value to create, expand, improve, update/supplement, market and promote LawMode's Copyrighted Work.

c.  Lexis Nexis failed to respond to LawMode's request for a list of subscribers so that LawMode could market its Content and templates to those subscribers under LawMode's HotDocs® reseller licensing arrangement, or in conjunction with ICLE, or through Thomson-West Publishing Company, or another publisher.

d.  Defendant failed to register Plaintiff's Content with the U.S. Copyright Office, even though Defendant, as the *de facto* Publisher, by custom and practice, should have secured the copyright.

69.  In the course of the parties' contractual relationship:

a.  LawMode disclosed in confidence to Lexis/Nexis certain information affecting LawMode's Copyrighted Work and its marketing for the limited purpose of promoting the sale of LawMode's Copyrighted Work to the mutual benefit of the parties (and not solely for the benefit of Lexis/Nexis).

b.  These disclosures included LawMode's sources of research, application of SCAO and other government forms, data from Michigan practice categories with a market for automated forms, sources of legal forms and their revisions, identification of Michigan markets and submarkets, intelligence about competitors and their products, legal expertise as to the coding of SCAO and other forms, and more.

Page 26 of 29

c.    The use of LawMode's ideas by Lexis/Nexis was solely to allow Lexis/Nexis to sell LawMode's Copyrighted Work in conjunction with Lexis/Nexis HotDocs® software under the terms of the Agreement.

d.    The commercial use of LawMode's ideas and expressions of ideas was conditioned on the payment of license fees by Lexis/Nexis to LawMode.

e.    This belief by LawMode that Lexis/Nexis was dealing in good faith with LawMode was reasonable.

f.    After terminating the Agreement, Lexis/Nexis breached its duty of good faith dealing by wrongfully converting to its own use certain of LawMode's trade secrets, trade dress, methods and processes incorporated into LawMode's Copyrighted Work and revealed by LawMode to Lexis/Nexis during the parties' commercial venture.

70.    Lexis/Nexis reportedly paid its Michigan sales staff substantially less in commissions on the direct sale of LawMode's Copyrighted Work than this same sales staff would have earned if it sold other Lexis/Nexis products; accordingly, Lexis/Nexis sales staff failed or neglected to put forth their "best efforts" to sell LawMode's Copyrighted Work.

## Demand for Relief

71.    In addition to granting the above relief, LawMode prays that this Court will find that:

a.    Plaintiff's claims are valid and enforceable as against Defendant;

b.    Defendant has infringed LawMode's Copyrighted Work.

c.    Defendant should be preliminarily and finally enjoined from further infringement;

d.    Plaintiff be awarded damages caused by Defendant's infringement, breach of contract, and other acts as above;

Page 27 of 29

c.    Plaintiff's damages include lost licensing fees and profits caused by Defendant;

f.    Plaintiff be granted its costs, attorney's fees, punitive or exemplary damages, and

other relief as provided by law and as this Court deems proper and just.

### Jury Demand

Plaintiff demands a jury trial on all issuable facts.

By:

Allen M. Krass (P16218)
John G. Posa (P49445)
*Attorneys for Plaintiff*
Gifford, Krass, Groh, Sprinkle, Anderson, & Citkowski, P.C.
101 N Main St. #800
Ann Arbor MI 48104
(734) 913-9300

Nov.
Dated: ~~October~~ 5, 2003

### Verification

On 29 October 2003 in Washtenaw County, Michigan, Joan M. Brovins, Affiant, being duly
sworn, deposes and says:

(a)    I have knowledge of the facts stated above because I am president of Ross, Brovins &
Oehmke, P.C. d/o/a/ LawMode, Plaintiff, a party and, if called to testify as a witness, I am
competent to testify to the above facts.
(b)    I have read the above document and the attachments and the statements above are stated
positively to the best of my information, knowledge and belief according to the facts.
(c)    This document is not interposed for delay and I declare, under penalty of contempt of court,
that there is good ground to support its contents.

Joan M. Brovins, Affiant

Subscribed and sworn to before me on 29 October 2003.

Thomas H. Oehmke, Notary Public
Leelanau County MI Acting in Washtenaw
Commission Expires 13 Nov 2005

Page 28 of 29

<u>Exhibits</u>

Exhibit A      Content Developer Agreement as amended
Exhibit B      Defendant's Termination Letter (02 November 2001)
Exhibit C      U.S. Copyright Registration No. TX 5-777-049

A

## Capsoft Development Corporation
## Content Developer Agreement

This Content Developer Agreement (the "Agreement"), effective as of February 27, 1997, is entered into by Capsoft Development Corporation, with offices at 732 East Utah Valley Drive, Suite 400, American Fork, Utah 84003 U.S.A. ("Capsoft") and Ross Brovins & Oehmke PC, a Michigan Prof. Serv. Corp., with offices at 60 Crocker Blvd., Ste. 1000, MT. Clemens, MI 48043 ("Developer"). Amendment and Content Notice Chart are incorporated by reference.

Developer has created HotDocs templates. Developer grants to Capsoft the right to use such templates to produce products for distribution, under the terms and conditions set forth below.

1. **Definitions**

    a. "HotDocs" means Capsoft's HotDocs software product.

    b. "Content" means HotDocs templates created by Developer. HotDocs templates shall be deemed Content at such time as Developer shall deliver such templates to Capsoft, accompanied by a notice identifying them as Content under this Agreement, and such Content is accepted by Capsoft.

    c. "Product" means Content which has been prepared by Capsoft for distribution to its customers.

2. **License**

    a. Developer grants to Capsoft an exclusive, nontransferable license to create Products based on Content and to market and distribute Products to its customers.

    b. Capsoft may, at its option, correct, modify, or enhance Content as it deems necessary in order to produce Products.

    c. Capsoft shall own all Products created under this Agreement. Capsoft shall obtain no ownership of Content.

3. **Deliverables**

    a. Developer shall deliver Content to Capsoft in a mutually agreed-upon electronic format.

    b. If Developer produces revised or updated versions of Content, such versions shall be submitted to Capsoft as soon as reasonably possible after they have been produced. Such revised or updated versions shall be deemed Content for the purposes of this Agreement.

4. **License Fee**

    a. For each copy of any Product distributed, Capsoft shall pay to Developer a license fee, which shall be a fixed fee or a percentage of the price paid by the customer. The fixed fee or percentage which shall be payable on any Product shall be agreed to in writing by Capsoft and Developer at the time Content is first provided to and accepted by Capsoft.

    b. Capsoft is not required to pay a license fee for Products returned for a refund or for Products distributed at no charge for purely promotional purposes.

    c. If Products are bundled with other goods or services, the portion of the purchase price attributed to Products and to such other goods or services shall be equitably apportioned.

    d. Within 30 days after the end of each calendar quarter, Capsoft shall provide to Developer a statement indicating the number of copies of its Products distributed during that quarter and the license fee due. License fee payment shall accompany the quarterly statement.

5. **Audit**

    Capsoft agrees to keep accurate books of account and records covering all Products distributed by it. Developer shall have the right, upon 10 days prior written notice and during reasonable business hours, to have a certified public accounting firm or other representative examine Capsoft's records relating to the foregoing. Developer shall bear the cost of such inspection and audit unless the results indicate underpayment of more than five percent for the period under review, in which case the reasonable cost of the audit shall be borne by Capsoft. Such audits shall be made no more frequently

than once every twelve months, unless the preceding audit revealed a material underpayment. All relevant records shall be kept available for at least two years after the termination of this Agreement.

6. Product Support

Capsoft shall provide all product support to users of Products. Capsoft may refer questions or comments regarding Content to Developer.

7. Term and Termination

a. The initial term of this Agreement shall be five years beginning with the effective date. The Agreement shall renew automatically for additional one-year terms unless written notice of termination is given by either party at least 90 days prior to the end of a term.

b. Notwithstanding the foregoing, either party may terminate this Agreement if the other party breaches any material provision and the breach is not cured within 30 days following written notice thereof by the other party.

c. Either party may terminate this Agreement without cause if required as a result of an order of a court of competent jurisdiction.

d. Upon termination of this Agreement for any reason, Capsoft shall cease marketing and distribution of Products. Termination of this Agreement shall not abridge or diminish in any way the rights of customers to the use and enjoyment of copies of Products which were properly distributed in accordance with this Agreement prior to termination.

e. It is agreed by both parties that Sections 4, 5, 8, 9, 10, and 11 as well as such other provisions of this Agreement as are expressly, or by their sense or context, meant to survive termination, shall survive the termination of this Agreement.

8. Warranty

Developer warrants that it has the authority to enter into this Agreement and that it is the owner or licensee of Content, with the right to license Content to Capsoft for use in producing Products.

9. Limitation of Liability

THE LIABILITY OF EITHER PARTY FOR ANY DAMAGES UNDER THIS AGREEMENT SHALL IN NO EVENT EXCEED THE AMOUNT OF PAYMENTS RECEIVED BY IT UNDER THIS AGREEMENT. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR INDIRECT, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES OR LOST PROFITS SUFFERED AS A RESULT OF OR IN ANY WAY CONNECTED TO THE LICENSE GRANTED IN THIS AGREEMENT, WHETHER UNDER THEORY OF CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE, EVEN IF IT HAS BEEN SPECIFICALLY ADVISED CONCERNING THE POSSIBILITY OF SUCH DAMAGES. THIS LIMITATION ON LIABILITY SHALL NOT EXTEND TO EITHER PARTY'S OBLIGATION TO INDEMNIFY THE OTHER.

10. Indemnification

Developer shall defend Capsoft from any claim, suit or proceeding alleging that Content is incorrect, incomplete, or in any way legally insufficient, or that Content infringes any third party copyright, trade secret, or other proprietary right, and shall pay any liabilities, damages, costs, and expenses finally awarded therein or paid in settlement.

11. Notices

a. All notices from Developer to Capsoft regarding this Agreement shall be directed to Marshall G. Morrise, President, at the address given above.

b. All notices from Capsoft to Developer regarding this Agreement shall be directed to Joan M. Erskovins, at the address given above.

12. Miscellaneous

a. This Agreement constitutes the entire understanding and contract between the parties hereto and supersedes any and all prior or contemporaneous oral or written communications with respect to this matter.

b.  This Agreement may be modified or amended only by a writing signed by authorized representatives of both parties.

c.  No failure to exercise any right or power under this Agreement or to insist on strict compliance by the other party shall constitute a waiver of the right subsequently to exercise such right or power or to insist on strict compliance.

d.  If any term of this Agreement is held invalid or unenforceable by a court or arbitrator of competent jurisdiction, such term shall be reduced or otherwise modified by such court or arbitrator to the minimum extent necessary to make it valid and enforceable.

e.  This Agreement is binding upon the parties and their respective successors, representatives, and assigns; however, neither party may assign or transfer this Agreement or any of its rights hereunder, nor delegate any of its duties and obligations

hereunder without prior written consent of the other party.  Notwithstanding the foregoing, either party may assign this Agreement to an affiliated company as part of a corporate reorganization in which all of the party's assets and liabilities are assigned to such affiliate, or as part of a sale of all or substantially all of the assets or stock of that party to a third party.

f.  This Agreement shall not be construed to create an agency or partnership between the parties.  Neither party has the authority to bind the other, to incur any liability or otherwise act on behalf of the other, or to direct the employees of the other.

g.  This Agreement shall be governed by and enforced in accordance with the laws of the State of Utah and of the United States of America, Fork, Utah, and any litigation or arbitration between the parties relating to this Agreement shall be conducted in the State of Utah or State of Michigan.

IN WITNESS WHEREOF, the parties set their hands the day and year set forth below.

Capsoft Development Corporation

By  _Mitchell L. Morris_

Title  _President_

Date  _April 8, 1997_

Ross Brovins & Oehmke PC, a Michigan Prof. Serv. Corp.  (EIN 38-3006297)

By  _Joan M. Brovins_

Title  Joan M. Brovins, President

Date 04 May 1997

10/18/2000  12:08  18013548099          CAPSOFT                    PAGE  86

# CONTENT NOTICE CHART

for

Ross Brovins & Oehmke, PC (Developer)

| Content | Date | License fee | Developer initials | Capsoft Initials |
|---------|------|-------------|--------------------|------------------|
| Estate Planning | Fentary 26, 1997 | 30% sales price 50% internet | | |
| Estate Planning free bundle with HotDocs | February 26, 1997 and ABA Journal Fall, 1996 | $5 / copy | | |
| Incorporations | Febrary 26, 1997 | 30% sales price 50% internet | | |
| Probate | February 26, 1997 | 30% sales price 50% internet | | |
| Real Estate | February 26, 1997 | 30% sales price 50% internet | | |
| Landlord-Tenant Evictions | February 27, 1997 | 30% sales price 50% internet | | |
| Common SCAO Forms | February 27, 1997 | 30% sales price 50% internet | | |
| Collection of Judgement | February 27, 1997 | 30% sales price 50% internet | | |
| Common SCAO Forms free bundle with HotDocs | March 15, 1997 | $5 / copy | | |

5-4-97



## Capsoft Development Corporation
## Amendment to Content Developer Agreement

This Amendment modifies certain provisions of the Content Developer Agreement (the "Agreement"), effective as of February 27, 1997, and is entered into by Capsoft Development Corporation, with offices at 732 East Utah Valley Drive, Suite 400, American Fork, Utah 84003 U.S.A. ("Capsoft") and Ross Brovins & Oehmke PC, a Michigan Prof. Serv. Corp., with offices at 60 Crocker Blvd., Ste. 1000, MT. Clemens, MI 48043 ("Developer"). The original Agreement is modified as follows:    /∞

Paragraph 1.b. is replaced by the following:

1.  b.  "Content" means HotDocs templates created by Developer. HotDocs templates shall be deemed Content at such time as Developer shall deliver such templates to Capsoft, accompanied by a notice identifying them as Content under this Agreement, and such Content is accepted by Capsoft, i.e. as listed in Content Notice Chart to which the parties may agree to add additional content from time to time. All OmniForm and .hft files (HotForm Automator) scanned by Capsoft, including but not limited to the SCAO forms and Secretary of State forms belong to Capsoft and are not included as content under this agreement and are not property of Developer.

Paragraph 2.b. is replaced by the following:

2.  b.  Capsoft may, at its option, correct, modify, or enhance Content as it deems necessary in order to produce Products subject to Developer approval.

Paragraph 2.c is replaced by the following:

2.  c.  Capsoft shall own all Products created under this Agreement. Capsoft shall obtain no ownership of Content. Developer owns all content.

The following paragraph will be added as paragraph 3.c.:

3.  c.  Capsoft shall give its "Best efforts" to market products. Best efforts means a minimum of a one full page, add a quarter or three smaller adds a quarter in a publication in developer's jurisdiction, and one direct mail piece a year. Capsoft will also include product in any catalog it distributes to developer's jurisdiction. The parties may modify this agreement through mutual assent, formal or informal mediation.

Paragraph 4.b is replaced by the following:

4.  b.  Capsoft is not required to pay a license fee for Products returned for a refund. Also Capsoft is not required to pay a license fee for Products distributed at no charge for purely promotional purposes if offered with Developer's written approval.

Paragraph 4.d. is replaced by the following:

4.  d.  Within 30 days after the end of each calendar quarter, Capsoft shall provide to Developer a statement indicating the number of copies of its Products distributed during that quarter and the license fee due. License fee payment shall accompany the quarterly statement which shall disclose returns and refunds.

Paragraph 7.a. is replaced by the following:

7.  a.  The initial term of this Agreement shall be three years beginning with the effective date. The Agreement shall renew automatically for additional one-year terms unless written notice of termination is given by either party at least 90 days prior to the end of a term.

Paragraph 10 is eliminated from the agreement including any reference thereto in §§ 7(e) and 9.

IN WITNESS WHEREOF, the parties set their
hands the day and year set forth below.

Capsoft Development Corporation

By _Mitchell R. Mouise_

Title _President_

Date _April 8, 1997_

Ross Brovins & Oehmke PC, a Michigan Prof.
Serv. Corp.

By _Joan M. Brovins_

Title _Joan M. Brovins, President_

Date _04 May 1997_

Capsoft
Development
Corporation

2222 South 950 East
Provo, Utah 84606
(801) 354-8000
FAX (801) 354-8099



August 11, 1997

Tom Oehmke
Lawmode
60 Crocker Blvd. Suite 100
Mount Clemens, MI 48043-2570

RE   New content

Dear Tom:

Thanks for correcting my error.. We will accept your Employment Handbook, Michigan Divorce and Michagan Civil Litigation libraries on delivery. We have not elected to have you work on the O'Conners project at this time.

If you have additional questions after reading this call me. I look forward to discussing these issues with you.

Sincerely,

Trey Dayes, Esq.
Director of Business Development
Content Product Manager
Capsoft Development Corporation

**From:**    trey.dayes@mail.capsoft.com <trey.dayes@mail.capsoft.com>
**To:**      lawmode@internetmci.com <lawmode@internetmci.com>
**Date:**    Tuesday, July 21, 1998 3:50 PM
**Subject:** Re[2]: Response to Divorce and Construction

Thanks for the info.  We are looking foward to Probate, Divorce and
Construction liens.


Trey


_____ Reply Separator

Subject: Re: Response to Divorce and Construction
Author:  LawMode <lawmode@internetmci.com> at internet
Date:    7/21/1998 2:58 PM

Trey:
Thanks for the reply;  while I understand you cannot accept delivery of the
content for Divorce presently, you will recall that (in  your letter to me
dated 11 AUG 1997) Capsoft agreed to accept this library as "content."
Nonetheless, we'll allow some more time so that you can see your way clear
on the other issues you raised.  We agree that existing products should take
higher priority and, I suspect, that Todd should receive the Probate update
by the beginning of next week. As to your other questions:

The Construction Lien library is completed.  It is written in HD 4.1; any
word processing templates are in WordPerfect 8.0, saved in WP 5.2 format.
The Construction Lien library contains all the forms needed by an attorney
to claim and perfect a construction lien.  [As the first update for this
library, I would propose adding another sublibrary of forms for Litigating
Construction Liens;  this update would allow the attorney the practice tools
not only to claim and perfect a construction lien but, also, to sue to
collect on any unpaid lien. Many of these litigation-related forms would be
drawn from our Michigan Civil Litigation library (now in beta testing).

The Divorce library is virtually complete and is being fresh tested
presently.  It too contains all of the forms needed in Michigan's new
"Circuit Court-Family Division" to obtain a divorce or annulment, or
personal protection orders.  These forms and templates are written in HD 4.1
(with any word processing templates in WordPerfect 8.0, saved in WP 5.2
format).

Tom

-----Original Message-----
From: trey.dayes@mail.capsoft.com <trey.dayes@mail.capsoft.com>
To: lawmode@internetmci.com <lawmode@internetmci.com>
Date: Tuesday, July 21, 1998 12:07 PM
Subject: Response to Divorce and Construction

8/19/98

> Tom-
>
> After reviewing the forms list I think both of these sets would be
> something we may be interested. The two things holding us up from
> immediately starting on them is (1) the buyout and (2) Todd is busy
> with other projects including Probate when it comes. I view existing
> products as taking a higher priority becuase they are out on the
> market?
>
> I think we are prepared to pursue these when the buyout happens/and
> when Todd's schedule clears. I can't accept them now though. A
> couple of questions on them.
>
> In each area (construction/divorce):
>
> 1  Are these all the forms you will need for practice in that area?
> If not what else is needed?
>
> 2  Are these forms alread automated?  If so, in what version?
>
>
> Thanks for all your work,
>
>
> Trey
>
>

## LawMode

**From:**     Stephanie Ashby <stepha@capsoft.com>
**To:**       Tom Oehmke <lawmode@cwixmail.com>; <bari.chase@bender.com>
**Sent:**     Monday, April 05, 1999 6:02 PM
**Subject:**  Michigan Divorce Library

Tom,

Capsoft Development has decided to accept the content of the Divorce Library.  Please complete the work that needs to be done to finish the library.

Thanks,
Stephanie Ashby

**LawMode**

| | |
|---|---|
| **From:** | Bari Chase <bari.chase@bender.com> |
| **To:** | <LawMode@cwixmail.com> |
| **Cc:** | <stepha@capsoft.com> |
| **Sent:** | Tuesday, April 06, 1999 2:27 PM |
| **Subject:** | Re[2]: Michigan Divorce Library |

Yes we will accept the Divorce Library and market it together with the other Michigan products that we have.

_____ Reply Separator

Subject: Re: Michigan Divorce Library
Author: LawMode <LawMode@cwixmail.com> at INTERNET
Date:    04/06/1999 12:44 PM

Bari
Given the interrelationships between Capsoft and M-B, would you be kind enough t
confirm by email that Capsoft/Matthew-Bender will accept the Divorce library con
nt?
Thanks,
Tom
   —— Original Message ——
   From: Stephanie Ashby
   To: LawMode ; bari.chase@bender.com
   Sent: Tuesday, April 06, 1999 12:38 PM
   Subject: Re: Michigan Divorce Library

   Tom,
   Bari is still looking into how the Construction Library can be coupled with
   some of the MB and LLP print materials as was discussed yesterday on the
phone. Becauseit is still uncertain what exactly is going to happen with those
   products we cannot yet accept the Construction Lien Library. When we have more
information regar ng the other products we then be able to make a decision about
Construction Liens.

   Stephanie

      -----Original Message-----
      From: LawMode <LawMode@cwixmail.com>
      To: Stephanie Ashby <stepha@capsoft.com>
      Date: Tuesday, April 06, 1999 6:22 AM
      Subject: Re: Michigan Divorce Library

   Stephanie
   I will do so.   Estimated delivery date for this content is August 1st, if
   not sooner. What about Michigan Construction Lien library?
   Tom
      —— Original Message ——
      From: Stephanie Ashby
      To: Tom Oehmke ; bari.chase@bender.com

Sent: Monday, April 05, 1999 6:02 PM
Subject: Michigan Divorce Library

Tom,

Capsoft Development has decided to accept the content of the Divorce Library.  Please complete the work that needs to be done to finish the library.

Thanks,
Stephanie Ashby

B

 **LexisNexis™**

November 2, 2001

Via Certified Mail – Return Receipt Requested

Joan M. Brovins
Ross Brovins & Oehmke, PC
60 Crocker Boulevard
Suite 100
Mount Clemens, Michigan  48043

RE: Capsoft Development Corporation Content Developer Agreement dated February 27, 1997 and the Amendment thereto dated May 5, 1997 (collectively, the "Agreement").

Dear Ms. Brovins:

Pursuant to Section 7a of the Agreement, this letter serves as notice from Matthew Bender & Company, Inc., successor-in-interest to Capsoft Development Corporation, that the Agreement will be terminated effective February 26, 2002.

We are in the process of developing a revised automated forms strategy and the Michigan product, in its current configuration, does not meet the company's requirements.

If you have any questions please do not hesitate to contact me.

Sincerely,

Edwin J. Tisdale
Director – Automated Forms
LexisNexis

Enclosures (contract and amendment)

cc:  Tom Oehmke

C

11/05/2003    10:48    GIFFORD KRASS ÷ BHAM    NO.563    P02

# ERTIFICATE OF REGISTRATION



OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

**FORM TX**
For a Literary Work
UNITED STATES COPYRIGHT OFFICE

**TX 5-777-049**

MONTH June DAY 17 YEAR 2003

LINE IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

---

**1**

**TITLE OF THIS WORK ▼**

LexisNexis (TM) Automated Michigan Forms

**PREVIOUS OR ALTERNATIVE TITLES ▼**

2543 Release August 2001 82054-02 84

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared    Title of Collective Work ▼

If published in a periodical or serial give    Volume ▼    Number ▼    Issue Date ▼    On Page ▼

---

**2**

**a**

**NAME OF AUTHOR ▼**

Ross Brovins & Oehmke P C d/b/a LawMode

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶ Michigan

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
All computer files ending in  cmp  hd  wpd  dot and  tpl (not but  Real Estate IRS Forms )

**NOTE**

Under the law the "author" of a work made for hire is generally the employer not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part and leave the space for dates of birth and death blank.

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
2001

**b**

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Month August    Day 1    Year 2001
USA

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Ross, Brovins & Oehmke P C d/b/a LawMode
11997 E Camp Haven Rd
Northport, MI 49670

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**APPLICATION RECEIVED**
JUN 17 2003
**ONE DEPOSIT RECEIVED**
JUN 17 2003
**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

DO NOT WRITE HERE — OFFICE USE ONLY

---

**MORE ON BACK ▶** Complete all applicable spaces (numbers 5-11) on the reverse side of this page    DO NOT WRITE HERE
See detailed instructions.    Sign the form at line 10.

11/05/2003   10:48   GIFFORD KRASS → BHAM   NO.563   P03

EXAMINED BY _____   FORM TX

CHECKED BY _____

☐ CORRESPONDENCE
Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☒ No  If your answer is Yes  why is another registration being sought? (Check appropriate box) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work as shown by space 6 on this application
If your answer is Yes  give  Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work  complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼
Approx  500 forms published by the State of Michigan (or its (a) State Court Administrative Office  (b) Dept of Treasury

b Material Added to This Work Give a brief  general statement of the material that has been added to this work and in which copyright is claimed ▼
Using HotDocs (TM) computer software  created component files (ending in  cmp) which automated all forms (except Real Estate

**6**

See instructions
before completing
this space

**— space deleted —**

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS** A signature on this form at space 10 and  a check in one
of the boxes here in space 8 constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and
under the conditions and limitations prescribed by the regulations of the Copyright Office (1) copies of the work identified in space 1 of this application in Braille (or similar tactile
symbols)  or (2) phonorecords embodying a fixation of a reading of that work  or (3) both.

a. ☐ Copies and Phonorecords          b. ☐ Copies Only          c. ☐ Phonorecords Only

**8**

See instructions

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office  give name and number of Account
Name ▼          Account Number ▼

**9**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent  Name/Address/Apt/City/State/ZIP ▼
John G  Posa
101 N  Main St  Suite 800
Ann Arbor, MI  48104
          Area Code and Telephone Number  ▶  734 913-9300

Be sure to
give your
daytime phone
number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Ross  Brovins & Oehmke  P C  d/b/a LawMode
          Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge

Typed or printed name and date ▼ If this application gives a date of publication in space 3  do not sign and submit it before that date
John G  Posa
                                        date ▶  June 25  2003

☞          Handwritten Signature (X) ▼

**10**

**MAIL
CERTIFI-
CATE TO**

Name ▼
John G  Posa

Number/Street/Apt/Unit Number ▼
101 N  Main St  Suite 800

City/State/ZIP ▼
Ann Arbor  MI  48104

**Certificate
will be
mailed in
window
envelope**

Complete all necessary spaces
Sign your application in space 10

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE
1  Application form
2  Nonrefundable $30 filing fee
   in check or money order
   payable to  Register of Copyrights
3  Deposit material

MAIL TO
Register of Copyrights
Library of Congress
Washington  D C  20559-6000

**11**

17 U S C  section  506(e)  Any person who knowingly makes  a  false representation of a material fact in the application for copyright registration provided for by section 409  or in any written statement filed in

11/05/2003    10:48    GIFF   KRASS → BHAM                              NO.563    P04

# CONTINUATION SHEET
# FOR APPLICATION FORMS

● This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX and VA only. Indicate which basic form you are continuing in the space in the upper right hand corner

● If at all possible, try to fit the information called for into the spaces provided on the basic form

● If you do not have space enough for all the information you need to give on the basic form, use this continuation sheet and submit it with the basic form

● If you submit this continuation sheet, clip (do not tape or staple) it to the basic form and fold the two together before submitting them

● Part A of this sheet is intended to identify the basic application
Part B is a continuation of Space 2
Part C (on the reverse side of this sheet) is for the continuation of Spaces 1 4 or 6

**DO NOT WRITE ABOVE THIS LINE  FOR COPYRIGHT USE ONLY**

**FORM TX /CON**
UNITED STATES COPYRIGHT OFFICE

RE    TX 5-777-049

PA PAU SE SEG SEU SR SRU TX TXU VA VAU

EFFECTIVE DATE OF REGISTRATION

_____ (Month) June (Day) 17 (Year) 2003

CONTINUATION SHEET RECEIVED

JUN 17 2003

Page  3  of  4  pages

---

**A**
Identification
of
Application

**IDENTIFICATION OF CONTINUATION SHEET** This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work
● TITLE (Give the title as given under the heading 'Title of this Work' in Space 1 of the basic form)

LexisNexis (TM) Automated Michigan Forms

● NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S)  (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form)

Ross Brovins & Oehmke P C d/b/a LawMode

---

**B**
Continuation
of Space 2

**NAME OF AUTHOR ▼**

**d**

**DATES OF BIRTH AND DEATH ▼**
Year Born ▼    Year Died ▼

Was this contribution to the work a  work made for hire ?
☐ Yes
☐ No

**AUTHOR S NATIONALITY OR DOMICILE**
Name of Country
OR{ Citizen of ▶ _____
    Domiciled in ▶ _____

**WAS THIS AUTHOR S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed  ▼

**NAME OF AUTHOR ▼**

**e**

**DATES OF BIRTH AND DEATH ▼**
Year Born ▼    Year Died ▼

Was this contribution to the work a  work made for hire ?
☐ Yes
☐ No

**AUTHOR S NATIONALITY OR DOMICILE**
Name of Country
OR{ Citizen of ▶ _____
    Domiciled in ▶ _____

**WAS THIS AUTHOR S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed  ▼

**NAME OF AUTHOR ▼**

**f**

**DATES OF BIRTH AND DEATH ▼**
Year Born ▼    Year Died ▼

Was this contribution to the work a  work made for hire ?
☐ Yes
☐ No

**AUTHOR S NATIONALITY OR DOMICILE**
Name of Country
OR{ Citizen of ▶ _____
    Domiciled in ▶ _____

**WAS THIS AUTHOR S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed  ▼

---

Use the reverse side of this sheet if you need more space for continuation of Spaces 1 4  or 6 of the basic form

CONTINUATION OF    (Check which)    ☐ Space 1    ☐ Space 4    ☒ Space 6

**C**

Continuation
of other
Spaces

6a (Con't)

(c) Dept of Consumer & Industry Services  certain IRS forms

6b (Con t)

IRS Forms) in this work  created additional forms represented by computer files ending in   wpd    dot and  tpl  created library list of forms with descriptions represented by computer files Mipfrmhd hdl and Mipfrmhw hdl

MAIL
TO

Name ▼

John G Poss
Number/Street/Apt ▼

101 N Main St  Suite 800
City/State/Zip ▼

Ann Arbor  MI  48104

Certificate
will be
mailed in
window
envelope

**D**

Address for
return of
certificate

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROSS, BROVINS & OEHMKE, P.C.
d/b/a LAWMODE, a Michigan corporation,

      Plaintiff,

vs.

Case No. 03-74474

Honorable Nancy G. Edmunds

Magistrate Judge Steven D. Pepe

LEXIS/NEXIS, a Division of Reed Elsevier
Group, PLC, a British Corporation, and owner
of Matthew Bender & Co., Inc., a New York
corporation, d/b/a Capsoft Development
Corporation,

      Defendant.
_____/

GIFFORD, KRASS, GROH, SPRINKLE,
  ANDERSON & CITKOWSKI, P.C.
John G. Posa
280 N. Woodward, Suite 400
Birmingham, Michigan 48009
*Attorneys for Plaintiff*

BUTZEL LONG
James E. Stewart (P23254)
Christopher M. Taylor (P63780)
350 South Main Street, Suite 300
Ann Arbor, Michigan 48104
(734) 995-3110

PROSKAUER ROSE LLP
Charles S. Sims
Frank P. Scibilia
1585 Broadway
New York, New York 0036
(212) 969-3950
*Attorneys for Defendant*

_____/

## **PROOF OF SERVICE**

JANINE CONROY VAN CLEVE states that on the 17th day of December, 2004, she served a copy of Defendant Lexis/Nexis' Motion for Reconsideration and Memorandum of Law in Support of Its Motion for Reconsideration upon:

> John G. Posa, Esq.
> Gifford, Krass, Groh, Sprinkle,
>   Anderson & Citkowski, P.C.
> 280 N. Woodward, Suite 400
> Birmingham, Michigan  48009

by enclosing a copy of said document in an envelope addressed to the above individual with postage fully pre-paid and depositing the same in the United States mail, Detroit, Michigan.

*Janine Conroy Van Cleve*
Janine Conroy Van Cleve

The signator is known to me and acknowledged the
foregoing instrument this 17th day of December, 2004.

*Kathleen A. Reichenbach*
Kathleen A. Reichenbach, Notary Public
Wayne County, Michigan
My Commission Expires:  10/31/2010