UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ROSS, BROVINS & OEHMKE, P.C.
d/b/a LAWMODE, a Michigan corporation,

    Plaintiff,

vs.

LEXIS/NEXIS, a Division of Reed Elsevier
Group, PLC, a British Corporation, and owner
of Matthew Bender & Co., Inc., a New York
corporation, d/b/a Capsoft Development
Corporation,

    Defendant.
_____/

Case No. 03-74474
Honorable Nancy G. Edmunds
Magistrate Judge Steven D. Pepe

GIFFORD, KRASS, GROH,
SPRINKLE, ANDERSON &
CITKOWSKI, P.C.
John G. Posa
280 N. Woodward, Suite 400
Birmingham, Michigan 48009
*Attorneys for Plaintiff*

BUTZEL LONG
James E. Stewart (P23254)
Christopher M. Taylor (P63780)
350 South Main Street, Suite 300
Ann Arbor, Michigan 48104
(734) 995-3110

PROSKAUER ROSE LLP
Charles S. Sims
Frank P. Scibilia
1585 Broadway
New York, New York 0036
(212) 969-3950
*Attorneys for Defendant*
_____/

# LEXISNEXIS'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

# **TABLE OF CONTENTS**

**Page**

INDEX OF AUTHORITIES ................................................................................................ ii

Conclusion ........................................................................................................... 5

# INDEX OF AUTHORITIES

**Page**

**Cases**

*Ferndale Laboratories, Inc. v. Schwarz Pharma, Inc.*,
   No, 02-2256 (6th Cir. Jan. 13, 2005) (unpublished slip op., copy attached in
   LexisNexis's opening memorandum of law at 12 n. 5) ........................................................... 5

*Wrench LLC v. Taco Bell Corp.*,
   256 F.3d 446, 457-58 (6th Cir. 2001) ................................................................................... 2

The motion for judgment on the pleadings made a very simple argument: LawMode's last remaining claim should be dismissed because there is no applicable contractual promise in the Agreement that the alleged breaching conduct would violate. As LexisNexis's memorandum of law put it, "LawMode's allegations that such misappropriation or conversion has taken place cannot give rise to liability for breach of contract, because the Agreement contains no promise that LexisNexis would not 'misappropriate' or 'convert' LawMode's content." LexisNexis Mem. 1; *see also id.* at 2 ("There can be no successful breach of contract claim here because there is no relevant contractual promise").

The point of the motion was that the contract claim failed on its merits, not that contract claims are categorically preempted. And to defeat the motion, LawMode had only the modest burden of identifying a provision in the Agreement which LexisNexis's alleged conduct would breach (if proven at trial). The opposition utterly fails to carry that burden.

Referring briefly to Paragraphs 1.b and 2.c of the Agreement, LawMode conclusorily contends that "LexisNexis breached at least two promises under the Agreement: (1) it used LawMode's Content without authorization to develop hundreds of SCAO and other Michigan forms, and (2) it failed to compensate LawMode for its misappropriation of LawMode's Content." LawMode Opp. 1. But saying so does not make it so.

Neither of those provisions (which contain no promises at all, and as discussed below are not the kinds of contractual provisions that can even be breached), nor any others, embody any promise by LexisNexis to not develop SCAO or other Michigan forms after termination of the Agreement according to its terms. Even if there were a promise not to "use LawMode's Content" in that development process (and neither the two provisions cited nor any others contains such a promise), the Court has already necessarily concluded, in

dismissing LawMode's copyright claim, that LexisNexis's templates do *not* use LawMode's templates.

Similarly, the Agreement lacks any promise by LexisNexis to compensate LawMode for any templates that LexisNexis employees created after termination of the Agreement.[1] Further, the Court's rejection of the copyright claim necessarily means that LexisNexis did not "appropriate" or "misappropriate" "LawMode's Content" (defined in ¶ 1.b of the Amended Agreement as "templates created by Developer [LawMode] . . . [once] LawMode shall deliver such templates to LexisNexis."[2]

The only paragraph remotely pertinent to LawMode's imagined promise to compensate LawMode for the templates that LexisNexis itself created, which are not substantially similar to LawMode's templates, is Agreement ¶ 4, which provides in pertinent part:

> 4.a.   For each copy of any Product distributed, [LexisNexis] shall pay to [LawMode] a license fee . . .
>
> 4.d.   Within 30 days after the end of each calendar quarter, [LexisNexis] shall provide to Developer a statement indicating the number of copies *of its Products distributed during that quarter* and the license fee due.  License payment shall accompany the quarterly statement which shall disclose returns and refunds.[3]

---

[1]   A promise to pay is indispensable, because under Sixth Circuit law a bare promise not to copy is preempted.  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457-58 (6th Cir. 2001).

[2]   As amended in May 1997, ¶ 1.b defines content as "HotDocs templates *created by [LawMode.]. HotDocs templates shall be deemed Content at such time as [LawMode] shall deliver such templates to [LexisNexis], accompanied by a notice identifying them as Content under this Agreement . . . . "*  The templates being sold by LexisNexis after termination  are not "Content" subject to the Agreement because they are "created by LexisNexis" and have never been "delivered" by LawMode to LexisNexis.  They are therefore not "owned"by LawMode under ¶ 2.c of the Amended Agreement.
     Throughout, for ease of reading, references in the Agreement to "Developer" and to "Capsoft" (LexisNexis's predecessor) are replaced by references to LawMode and LexisNexis, respectively.

[3]   Paragraph 4.a is set forth in the original Development Agreement (April 8, 1997), which was annexed to the Complaint.  The text of paragraph 4.d is taken from the Amendment to Content Developer Agreement (May 4, 1997), which was also annexed to the Complaint.

Because "Product" is defined as "Content", which in turn is defined (¶ 1.b) as "HotDocs templates *created by [Lawmode] . . . at such time as [LawMode] shall deliver such templates to [LexisNexis], accompanied by a notice identifying them as Content under this Agreement,"* Paragraph 4 is a promise by LexisNexis to pay LawMode for templates *LawMode created* and delivered under the Agreement. What LawMode is seeking payment for, however, are templates *LexisNexis's employees created* in LexisNexis's own facilities, after the Agreement terminated, which were *never* delivered by LawMode, and are not "Product."

That the promise to pay in ¶ 4.d applies refers only to the particular templates LawMode created is reflected in the preamble to the Agreement, which provides that "[LawMode] has created HotDocs templates. [LawMode] grants to [LexisNexis] the right to use such templates to produce products for distribution, under the terms and conditions set forth below." As the Agreement plainly demonstrates, the parties agreed LexisNexis would pay LawMode for product LawMode created – not that LawMode would receive royalties for product LexisNexis employees created, after the term of the Agreement.

In short, Paragraph 4 cannot be stretched into the promise LawMode needs to avoid judgment on the pleading under contract law. Because LexisNexis has not, since the Agreement was terminated, been distributing HotDocs templates created by LawMode – "Product" as defined in the Agreement – its distribution of a different product developed by its own employees does not breach the compensation promise in Paragraph 4.

If what LexisNexis produced was infringing, then LawMode had a copyright remedy, based on the agreement as to ownership of the intellectual property created under the Agreement, which reflects the parties' intention that the LawMode templates would not be works for hire. But the Court has found that the facts defeat any such claim. And the

3

Agreement entirely lacks any promise by LexisNexis to pay royalties to LawMode for the templates LexisNexis employees created after the Agreement terminated, and which were not delivered by LawMode and are not substantially similar to templates that were.

The promises LawMode fantasizes are not only absent from the Agreement, but commercially absurd. It would have been commercially bizarre for LexisNexis, having carefully provided for the termination of its Agreement with LawMode in Paragraph 7 ("Term and Termination"), to preclude itself from replacing those templates *after* the term was terminated with the work of its own employees, or with an obligation to pay tribute to LawMode in perpetuity if it did. LawMode's argument thus not only flies free of any contractual promises, but is also inconsistent with the provisions the Agreement does contain. Contract law strives to interpret contracts in commercially reasonable fashion, not to interpret them (against their plain language) in ways no sensible business would have agreed to.

Finally, Paragraph 2.c, providing that LawMode "owns all content," does not aid LawMode, because as Paragraph 1.b defines content the provision means only that LawMode owns "HotDocs templates created by [LawMode]," not that it would own templates that LexisNexis developed independently after the Agreement terminated.

LawMode seems to believe that contractual terms are merely the platforms for a party's imagination, and that the precise language or structure of contractual provisions may be entirely ignored or stretched at will. The law, however, is quite otherwise, as was made plain by the case LexisNexis relied on – entirely ignored by LawMode – which observed that various contractual provisions do not "give rise to a duty or obligation on the part of either party and, therefore, [are] not []contractual provision[s] that even could be breached." *Ferndale Laboratories, Inc. v. Schwarz Pharma, Inc.,* No, 02-2256 (6th Cir. Jan. 13, 2005)

4

(unpublished slip op., copy attached in LexisNexis's opening memorandum of law at 12 n. 5).

The Agreement contains a standard integration clause, and says what it says – not what LawMode's counsel imagines it says, and not that LexisNexis promised not to create its own non-infringing templates after the term of the Agreement, or that LexisNexis would pay LawMode royalties indefinitely if it did.

If Billy and Mary agree that he will own the drawing of a tree they're about do on a piece of paper, they have not agreed that Mary cannot thereafter take her own piece of blank paper and draw another tree. If Mary agrees to pay Billy for drawing a tree, and she pays him for doing so, she can then draw her own tree without owing him a cent more. Lafayette Coney Island and its employees can agree that the employer "owns all the chili dogs created on its premises", but if the employees quit their jobs and proceed to make chili dogs across the street, it has no claim for breach of contract against them, unless the employment agreement contained an additional promise not to make chili dogs next door (or to pay royalties if they did).

## Conclusion

LexisNexis should be granted judgment on the pleadings dismissing with prejudice LawMode's sole remaining claim – the claim in paragraph 48.b for breach-of-contract-by-misappropriation.

    Respectfully submitted,

    By: s/James E. Stewart (P23254)
        Butzel Long

        Charles S. Sims
        Frank P. Scibilia
        PROSKAUER ROSE LLP

        Attorneys for Defendant

Dated: February 11, 2005

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 11, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to:

John G. Posa, Esq.
GIFFORD, KRASS, GROH, SPRINKLE,
  ANDERSON & CITKOWSKI, P.C.
280 N. Woodward, Suite 400
Birmingham, Michigan 48009

                                        s/James E. Stewart (P23254)
                                        Butzel Long
                                        350 South Main Street, Suite 300
                                        Ann Arbor, Michigan 48104
                                        (734) 995-3110
                                        stewarje@butzel.com
                                        P23254